[No. E010850. Fourth Dist., Div. Two. Aug. 26, 1993.]

THE PEOPLE, Plaintiff and Respondent, v.
CYNTHIA PURCELL, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part II.

**COUNSEL**

Jennifer L. King, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Robert M. Foster and Louis R. Hanoian, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**McKINSTER, J.**—A jury convicted defendant of first degree murder prosecuted solely on a felony-murder theory and, further, found true the special circumstance allegation that defendant committed the murder while engaged in the commission or attempted commission of a robbery within the meaning of Penal Code section 190.2, subdivision (a)(17). Thereafter the trial court sentenced defendant to state prison for the term prescribed by law, that being life without the possibility of parole.

Defendant's contentions in this appeal are directed at challenging the jury's true finding on the special circumstance allegation. We first address defendant's claim that the trial court erred in failing to instruct the jury, sua sponte, on the meaning of the phrase "reckless indifference to human life" as used in Penal Code section 190.2, subdivision (d) and included in CALJIC No. 8.80.1, pursuant to which the trial court here instructed the jury in connection with the special circumstance allegation.

We conclude, for reasons explained below, the phrase "reckless indifference to human life" as used in Penal Code section 190.2, subdivision (d) and included in CALJIC No. 8.80.1 has a technical meaning peculiar to the law such that the trial court had a sua sponte duty to define that phrase for the jury. We further conclude, however, that the trial court's oversight, in view of the evidence in this case, was harmless beyond a reasonable doubt.

### FACTS

The evidence presented at trial essentially was undisputed. According to defendant's statements to the police following her arrest, defendant and her apparent boyfriend, Michael Combs, developed a plan to rob someone and steal that person's car so they could leave the Barstow area, where defendant and Combs both lived, in order for Combs to avoid an upcoming court appearance on pending forgery charges. To that end, defendant and Combs considered several potential robbery victims. Because the potential victims all were people defendant or Combs knew personally, Combs decided it would be necessary to kill the ultimate victim in order to prevent the victim from identifying Combs and defendant. Combs initially considered Danny

Smith, the manager of the Torches Motel where defendant previously had worked, as the appropriate target. However, after defendant apparently expressed reluctance to kill someone she knew personally and further pointed out that Smith would not have cash but only checks and credit card receipts, Combs changed his mind. Combs ultimately decided on Janine Lee, whom defendant did not know personally, but whom Combs had worked with and knew had a car. Combs also believed Lee had money.

Sometime during the day on which the robbery occurred, Combs took an extension cord from the Torches Motel. Defendant and Combs also bought some nylon rope from an army surplus store. Later in the day, apparently in the early evening, Combs telephoned Janine Lee from the Torches Motel and, in accordance with the robbery plan, asked Lee to drive defendant and Combs to Calico. Combs apparently told Lee that he and defendant intended to spend the weekend with a friend who was camping in Calico. Lee picked up defendant and Combs at the motel around 8 p.m. Combs apparently put a bag containing the extension cord and a flashlight in the trunk of Lee's car. In accordance with their plan, defendant sat in the front passenger seat of Lee's car and Combs sat in the backseat so Combs could use the extension cord to strangle Lee from behind once they found an appropriately isolated area in Calico. Defendant was supposed to help Combs by taking the keys from the ignition of Lee's car and also tying Lee's hands with the nylon rope.

After arriving in the Calico area, Combs directed Lee to drive to various locations under the guise of looking for Combs's friend. At one point, apparently while on a dirt road heading into an area called Odessa Canyon, Combs claimed to have spotted his friend's trailer and Lee stopped the car. During the stop, Combs went to the trunk and took out the flashlight and extension cord. Combs apparently got back in the car, with the flashlight and extension cord, and Lee continued driving after Combs purportedly determined the trailer was not that of his friend.

Lee continued driving on the dirt road into the canyon until Combs saw a motorhome parked some distance off the road and again told Lee to stop the car. As Lee started to get out of the car, Combs quickly put the extension cord around Lee's neck and strangled her. At Combs's direction, defendant tied Lee's hands with the nylon rope which Combs had in his pocket during the entire trip. While Combs strangled Lee with the extension cord he told defendant that strangling might not be enough to kill Lee. At Combs's direction, defendant then hit Lee on the head with the flashlight until the flashlight broke. Again at Combs's direction, defendant put rocks inside a denim jacket and used the weighted jacket to hit Lee on the head.

After determining Lee was dead, Combs put her body in the trunk of the car. Combs then drove Lee's car to an apparently remote area of Odessa Canyon to dispose of the body. While Combs dumped Lee's body, defendant looked through Lee's purse for cash or credit cards and found Lee only had a checkbook. Defendant told Combs that Lee's purse essentially was empty and asked him to check Lee's clothes for money before leaving the body. Combs did so but did not find anything.

Lee's body was discovered the following day. Dr. Duazo, the forensic pathologist who performed the autopsy on Lee's remains, expressed the opinion at trial that the primary cause of Lee's death was ligature strangulation and the secondary cause was blunt head trauma injuries.

After dumping Lee's body, defendant and Combs drove back to Barstow where they attempted, unsuccessfully, to cash one of Lee's checks. From Barstow, the couple drove to Mexico in Lee's car. Along the way, defendant and Combs stopped in Lake Elsinore where they again tried to cash one of Lee's checks and again were unsuccessful. After spending several days in Mexico sleeping in Lee's car because they had been unable to get any money, defendant and Combs drove to Arizona to stay with a friend of defendant's. Defendant and Combs were arrested, approximately a week after Lee's death, in Arizona by the local county sheriff who had been advised by the San Bernardino County Sheriff that defendant and Combs were homicide suspects staying in the local area.

Defendant testified at trial[1] and stated she did not know Combs intended to kill Janine Lee. Defendant denied hitting Lee with the flashlight or rocks, although defendant acknowledged her statement to the police in which she admitted hitting Lee. Defendant stated Combs had told her to say she hit Lee, and, further, threatened to kill defendant if defendant told anyone about the murder. To support her assertion that she did not actually participate in killing Janine Lee, defendant presented the testimony of Parker Bell, a criminalist, who expressed the opinion that it would have been difficult, if not impossible, for anyone to have inflicted the wounds to Janine Lee's head in the manner defendant described to the police. Bell based his opinion primarily on the absence of significant bloodstains in the interior of Lee's car noting the only bloodstain was an apparently small spot on the driver's seat belt.

---

[1] The trial court granted defendant's motion for a separate trial. The record in defendant's appeal does not disclose Combs's fate. Combs did not testify at defendant's trial.

## DISCUSSION

## I

In connection with the special circumstance allegation, the trial court, among other things, instructed the jury in accordance with Penal Code section 190.2, subdivisions (b) and (d), and pursuant to CALJIC No. 8.80.1, that, "If you are satisfied beyond a reasonable doubt that the defendant actually killed a human being, you need not find that the defendant intended to kill in order to find the special circumstance to be true. [¶] If you find that a [*sic*] defendant was not the actual killer of a human being, or if you are unable to decide whether the defendant was the actual killer or an aider or abettor you cannot find the special circumstance to be true unless you are satisfied beyond a reasonable doubt that such defendant, with *reckless indifference to human life and as a major participant* aided, abetted, counseled [or], assisted in the commission of the crime of robbery which resulted in the death of a human being, namely Janine Lee." (Italics added.)

Defendant acknowledges the above instruction accurately reflects the language of Penal Code section 190.2, subdivisions (b) and (d) and, therefore, is a correct statement of the law. Defendant contends, however, that the phrase "reckless indifference to human life" has a technical meaning peculiar to the law such that the trial court was required to instruct the jury, sua sponte, on the meaning of that phrase. Defendant further contends the trial court's failure in this regard was prejudicial because, absent a clarifying instruction, the jury might have applied an ordinary negligence standard in finding the special circumstance allegation to be true. We agree with defendant's initial contention but conclude, as we shall explain, that the trial court's error here was harmless beyond a reasonable doubt.

 "Where, as here, the contention is that the instructions given needed amplication [*sic*] or explanation, the rule is that, in the absence of a request therefor, error cannot be predicated on the trial court's failure to instruct further on its own motion [citation] except where the terms used have a technical meaning peculiar to the law." (*People* v. *Earnest* (1975) 53 Cal.App.3d 734, 744 [126 Cal.Rptr. 107], citing *People* v. *Anderson* (1966) 64 Cal.2d 633, 639 [51 Cal.Rptr. 238, 414 P.2d 366].) Conversely, when "a phrase 'is commonly understood by those familiar with the English language and is not used in a technical sense peculiar to the law, the court is not required to give an instruction as to its meaning in the absence of a request.' " (*People* v. *Rowland* (1992) 4 Cal.4th 238, 270-271 [14 Cal.Rptr.2d 377, 841 P.2d 897].)

 In our view, "reckless indifference to human life" is not a phrase commonly used in a context other than "the law." Moreover, to the extent

the phrase is used in a nonlegal context, we are of the view "reckless indifference" commonly would be understood to mean something akin to extreme carelessness or extreme lack of concern.[2]

 ██ In contrast, the phrase "reckless indifference to human life" as used in CALJIC No. 8.80.1, and pursuant to which the trial court here instructed the jury, is taken from Penal Code section 190.2, subdivision (d) which provides, in pertinent part, that "every person not the actual killer, who with reckless indifference to human life and as a major participant, aids, abets, counsels, commands, induces, solicits, requests, or assists in the commission of a felony enumerated in paragraph (17) of subdivision (a), which felony results in the death of some person or persons, who is found guilty of murder in the first degree therefore, shall suffer death or confinement in state prison for life without the possibility of parole . . . ."[3]

Penal Code section 190.2, subdivision (d) does not include a definition of "reckless indifference to human life." However, the Supreme Court explained in *Tapia* v. *Superior Court* (1991) 53 Cal.3d 282 [279 Cal.Rptr. 592, 807 P.2d 434], that subdivision (d) of Penal Code section 190.2 is the result of Proposition 115, the "Crime Victim's Justice Reform Act," adopted by the voters of this state effective June 6, 1990. (53 Cal.3d at p. 286 and pp. 297-298.) Prior to the adoption of the provision presently codified in Penal Code section 190.2, subdivision (d), in order for a felony-murder special-circumstance allegation to be found true as to a defendant who was "an aider and abettor rather than the actual killer, intent [to kill] must be proved." (*People* v. *Anderson* (1987) 43 Cal.3d 1104, 1147 [240 Cal.Rptr. 585, 742 P.2d 1306].) ██ Proposition 115, among other things, eliminated the requirement of intent to kill as an element of the felony-murder special circumstance with respect to an aider and abettor. As a result, a defendant

---

[2]According to Webster's Third New International Dictionary (1964) page 1896, "reckless" means "lacking in caution; deliberately courting danger; foolhardy, rash; careless, neglectful, thoughtless." The term "indifference," is defined as "the quality or state of being indifferent; a manifestation or instance of this quality." In turn, "indifferent" means "that is looked upon as not mattering one way or another," and is synonymous with "unconcerned." (Webster's New Internat. Dict. (3d ed. 1964) p. 1151.)

[3]Because CALJIC No. 8.80.1 incorporates the language of Penal Code section 190.2, subdivision (d), the Attorney General asserts the trial court did not have a duty to define "reckless indifference to human life" for the jury, absent a request by defendant for an amplifying instruction. According to the Attorney General, "An instruction couched in statutory language adequately conveys the correct rule of law." While the "general rule provides that in defining the elements of a crime it is enough for the court to instruct in the language of the statute when the defendant fails to request an amplification thereof. [Citation.] . . . [T]hat rule is always subject to the qualification that, ' "An instruction in the language of a statute is proper only if the jury would have no difficulty in understanding the statute without guidance from the court." ' [Citation.]" (*People* v. *Failla* (1966) 64 Cal.2d 560, 565 [51 Cal.Rptr. 103, 414 P.2d 39].)

found guilty of felony murder but who is not the actual killer may be subjected to capital punishment or life in prison without possibility of parole in accordance with subdivision (d) of Penal Code section 190.2 "which provides that an accomplice, for a felony-murder special circumstance to be found true, must have been a major participant [in the underlying felony] and have acted with reckless indifference to human life . . . ." (*Tapia* v. *Superior Court, supra*, 53 Cal.3d at p. 298, fn. omitted.) Penal Code section 190.2, subdivision (d) "brings state law into conformity with *Tison* v. *Arizona* (1987) 481 U.S. 137, 158 . . . and, thus, changes state law to the detriment of defendants." (*Tapia* v. *Superior Court, supra*, 53 Cal.3d at p. 298, fn. 16.)

In *Tison* v. *Arizona* (1987) 481 U.S. 137 [95 L.Ed.2d 127, 107 S.Ct. 1676], the Supreme Court addressed the question of whether the Eighth Amendment prohibits imposing the death penalty on a defendant convicted of felony murder who was not the actual killer and who did not intend to kill in the traditional sense, but, rather, was a major participant in the underlying felony and "whose mental state [was] one of reckless indifference to the value of human life." (*Tison* v. *Arizona, supra*, 481 U.S. at p. 152 [95 L.Ed.2d at p. 141].)[4] In framing this issue, the Supreme Court first noted that the "facts not only indicate that the Tison brothers' participation in the crime was anything but minor; they also would clearly support a finding that they both *subjectively appreciated that their acts were likely to result in the taking of innocent life.*" (*Ibid.*, italics added.) The court concluded that the "reckless disregard for human life implicit in *knowingly* engaging in criminal activities *known* to carry a grave risk of death represents a highly culpable mental state, a mental state that may be taken into account in making a capital sentencing judgment when that conduct causes its natural, though also not inevitable, lethal result." (*Tison* v. *Arizona, supra*, 481 U.S. at pp. 157-158 [95 L.Ed.2d at p. 144], italics added.) Therefore, the Supreme Court held "that major participation in the felony committed, combined with reckless indifference to human life, is sufficient to satisfy the . . . culpability requirement" established by the court in *Enmund* v. *Florida* (1982) 458 U.S. 782 [73 L.Ed.2d 1140, 102 S.Ct. 3368] and, as such, comports with the proportionality requirement of the Eighth Amendment. (*Tison* v. *Arizona, supra*, 481 U.S. at p. 158 [95 L.Ed.2d at p. 145].)

---

[4]The defendants in *Tison* were two brothers convicted of felony murder in Arizona and sentenced to death for their participation in assisting their father and the father's cellmate to escape from prison. Following the prison escape, the participants, including the brothers, kidnapped a family of four and stole their car after which the father and the cellmate shot and killed all four family members. The two Tison brothers facilitated the prison escape, among other things, by carrying an ice chest filled with guns into the Arizona State Prison where their father was incarcerated, serving a life sentence, for killing a guard during a previous prison escape. The brothers participated in all aspects of the prison escape and subsequent flight including kidnapping the family and stealing their car. However, the brothers did not actually kill any of the four family members. (*Tison* v. *Arizona, supra*, 481 U.S. at pp. 139-141 [95 L.Ed.2d at pp. 132-134].)

In our view, and as evidenced by the above emphasized language, the *Tison* court intended the phrase "reckless indifference to human life" to refer to a mental state which includes subjective appreciation, or knowledge, by the defendant that the defendant's acts involved an extreme likelihood that such acts could result in the death of an innocent human being. As commonly understood, the phrase "reckless indifference to human life" neither expressly nor impliedly conveys the element of subjective appreciation, or knowledge, by the defendant. Consequently, we conclude "reckless indifference to human life" is used in Penal Code section 190.2, subdivision (d) "in a technical sense peculiar to the law." Accordingly, we must further conclude the trial court here had a sua sponte duty to instruct the jury on the meaning of that phrase. (*People* v. *Rowland, supra,* 4 Cal.4th at p. 271.) Absent such instruction, the jury, in our view, would not understand that the phrase "reckless indifference to human life" included in CALJIC No. 8.80.1 requires that a defendant who is an aider and abettor, and not the actual killer, knowingly engage in criminal activities known to carry a grave risk of death. (*Tison* v. *Arizona, supra,* 481 U.S. at pp. 157-158 [95 L.Ed.2d at pp. 144-145].)

Having concluded the trial court erred in failing to instruct the jury, sua sponte, on the meaning of "reckless indifference to human life," we next must determine whether the trial court's error was harmless beyond a reasonable doubt. (*People* v. *Harris* (1989) 47 Cal.3d 1047, 1100 [255 Cal.Rptr. 352, 767 P.2d 619].) In *Harris*, the Supreme Court acknowledged there was conflicting evidence presented regarding whether the defendant in that case was the actual killer or an aider and abettor for purposes of the felony-murder special-circumstance allegation. Therefore, the Supreme Court held the trial court should have instructed the jury, according to the law applicable at that time, that as to an aider and abettor, "intent to kill was a required element of the felony-murder special circumstance." (*Id.* at pp. 1099-1100.)

In addressing the question of prejudice resulting from the trial court's failure to instruct the jury on intent to kill, the *Harris* court noted, "It is not possible to determine from the verdicts rendered by the . . . jury that the jury necessarily convicted Harris as the actual killer. . . . [¶] Nonetheless, the failure to instruct on intent to kill was not prejudicial. The prosecution theory was that [Harris] was the actual killer, and the evidence that he, not [the codefendant], shot the victim, evidence that included his confessions, was overwhelming. We are satisfied therefore that the omission of this instruction did not affect the verdict and was harmless beyond a reasonable doubt." (*People* v. *Harris, supra,* 47 Cal.3d at p. 1100.)

In this case, as in *Harris*, it is not possible to determine either from the jury's verdict on the murder charge or from its finding on the special

circumstance allegation whether the jury necessarily found defendant actually participated in killing Janine Lee in which case the trial court's failure to define "reckless indifference to human life" was irrelevant and, therefore, harmless. The record in this case, like that in *Harris*, indicates the prosecutor's theory was that defendant and Combs both actually killed Janine Lee and there was evidence, which included defendant's admission to the police, to support that theory. Specifically, and as set out above, defendant admitted to the police not only that she and Combs planned the robbery, which plan included killing Lee, but also that defendant actually hit Janine Lee on the head both with a flashlight and a rock-filled jacket. Dr. Duazo, as noted above, testified that Janine Lee died as the result of strangulation and blunt head trauma injuries. In our view, the evidence that defendant actually participated in killing Janine Lee is overwhelming. Given that evidence, we are satisfied, as was the Supreme Court in *Harris*, that the trial court's instructional error here "did not affect the verdict and was harmless beyond a reasonable doubt." (*People* v. *Harris, supra,* 47 Cal.3d at p. 1100.)

In analyzing the question of prejudice, the *Harris* court not only relied on the "overwhelming" evidence that the defendant was the actual killer but also concluded it was not "necessary that intent to kill be found in order to satisfy the Eighth Amendment." (*People* v. *Harris, supra,* 47 Cal.3d at p. 1100.) Citing *Tison* v. *Arizona, supra,* the *Harris* court noted, "The death penalty is not excessive punishment when imposed on a person convicted of a felony murder under a statute restricting imposition to defendants who have actually killed, attempted to kill or intended to kill." (*People* v. *Harris, supra,* 47 Cal.3d at p. 1100.)[5] The court concluded, "A finding that one of these criteria has been met need not be made by the jury. [Citations.] The record in this case, independent of the special finding, clearly establishes that defendant was the actual killer and we so find." (*Ibid.,* fn. omitted.)

The defendant in *Harris* did not testify at trial and deny his participation in the murder as defendant did in this case. However, in concluding there was evidence from which the jury could have found the defendant was an aider and abettor such that the trial court should have instructed the jury on "intent to kill" in connection with the special circumstance allegation, the Supreme Court noted "the evidence of the identity of the actual killer was circumstantial. That evidence showed, however, that more than one person was involved in the murder. Each of the defendants may have been armed, and

---

[5]Although not pertinent to the *Harris* decision and, therefore, not mentioned by the court, in addition to the three criteria identified in *Harris*, the United States Supreme Court in *Tison* also held the death penalty, and by inference life in prison without possibility of parole, is not excessive punishment when imposed on a person convicted of felony murder under a statute restricting imposition to defendants who, as a major participant and with reckless disregard for human life, aid or abet in the underlying felony. (*Tison* v. *Arizona, supra,* 481 U.S. at p. 158 [95 L.Ed.2d at p. 145].)

either could have fired the shots from the gun that killed the victim." (*People v. Harris, supra,* 47 Cal.3d at p. 1099.) Despite that arguably conflicting evidence, the Supreme Court, as discussed above, nevertheless concluded the evidence defendant was the actual killer was "overwhelming" and, further, supported the court's independent finding that the defendant was the actual killer.

The only arguable conflict in the evidence in the present case regarding whether defendant actually participated in killing Janine Lee was defendant's trial testimony. That testimony, as noted above, was directed solely at refuting defendant's admission to the police that defendant hit Lee with the flashlight and rocks. Defendant, again as set out above, acknowledged her admission to the police but testified that she told the police she hit Janine Lee with the flashlight and rocks because Combs, for reasons undisclosed at trial, told defendant to say that defendant did so. Defendant did not recant any other aspect of her admission to the police and, therefore, did not deny that she participated in all aspects of the robbery other than actually killing Janine Lee. In light of that evidence and in accordance with the Supreme Court's analysis in *Harris,* we conclude "[t]he record in this case, independent of the special finding, clearly establishes that defendant was [an] actual killer and we so find." (*People v. Harris, supra,* 47 Cal.3d at p. 1100.)

In summary, for the reasons discussed above, we conclude the trial court's failure to instruct the jury, sua sponte, on the definition of "reckless indifference to human life" as used in CALJIC No. 8.80.1 was harmless beyond a reasonable doubt.

## II*

. . . . . . . . . . . . . . . . . . . . . . . . . . .

### DISPOSITION

The judgment is affirmed.

Dabney, Acting P. J., and Timlin, J., concurred.

Appellant's petition for review by the Supreme Court was denied November 17, 1993. Kennard, J., was of the opinion that the petition should be granted.

---

*See footnote, *ante,* page 65.