[No. A061944. First Dist., Div. Two. Sept. 30, 1994.]

THE PEOPLE, Plaintiff and Respondent, v.
ROLAND RICHIE, Defendant and Appellant.

**[Opinion certified for partial publication.*]**

*Pursuant to California Rules of Court, rules 976 and 976.1, this opinion is certified for publication with the exception of part II.

1348

## COUNSEL

Peter Dodd, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, and Matthew P. Boyle, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**KLINE, P. J.**—Roland Richie appeals from convictions of evading a pursuing police officer and joyriding. With respect to the former, he raises three separate objections: that the judge (1) failed to instruct the jurors on an element of the offense, (2) failed to instruct the jury sua sponte on the meaning of the terms "willful" and "wanton" as they appear in Vehicle Code section 2800.2, and (3) directed a verdict for respondent when he commented to the jury that appellant had effectively admitted violation of Vehicle Code section 2800.2. Appellant also claims that the imposition of a $200 restitution fine without a determination that he was able to pay violated Government Code section 13967, subdivision (a). We affirm the conviction and hold that appellant waived his objection to the fine.

### STATEMENT OF THE CASE

By information filed on February 10, 1993, appellant was charged with first degree burglary (Pen. Code, §§ 459/460, subd. (a)) (count 1), evading a police officer while driving in willful or wanton disregard for the safety of others (Veh. Code, § 2800.2) (count 2), unlawful taking of a vehicle with a prior conviction (Veh. Code, § 10851, subd. (a); Pen. Code, § 665.5) (count 3), and two prior prison term enhancements (Pen. Code, § 667.5, subd. (b)). On February 11, 1993, appellant pleaded not guilty and denied the enhancements.

After trial from March 29, 1993, to March 31, 1993, the jury found appellant not guilty of burglary, guilty of evading the police, not guilty of unlawfully taking a vehicle, but guilty of the lesser included offense of joyriding (Pen. Code, § 499b). On May 14, 1993, the trial court found that the prior offense allegations were true. On that date the court sentenced appellant to the midterm of two years on the evading the police count and stayed the prior enhancements. On May 25 the court imposed a 60-day sentence for the joyriding count, to be served concurrently with the first sentence. Defendant filed a timely notice of appeal on May 27, 1993.

## Statement of Facts

On October 14, 1992, Darlene Carman, age 65, was driven to Pittsburg in her Ford pickup by Albert Lee, her gardener. Carman is not a licensed driver. Lee got out of the pickup; when he did not return within 45 minutes, Carman asked appellant, who had happened by and with whom she had been talking for approximately 30 minutes, to drive her home. After arriving at her residence, Carman invited appellant in for a beer. According to Carman, appellant left after 30 minutes.

Carman testified that the next morning appellant knocked on her door and asked to use her bathroom. Carman admitted appellant, who walked down the hall toward the bathroom. When he came back, he had Carman's purse in his hand. As he neared Carman, he grabbed her keys from the top of the television set. Appellant then ran outside, followed by Carman. Appellant entered Carman's pickup and drove away. Carman called the police.

Carman provided Officer Lemons, who responded to her call, with details of the incident. Carman refused, however, to identify Albert Lee as the man with whom she had driven to Pittsburg the previous evening. Carman did say that she, appellant, and this third person had all gone out together, with appellant driving. Carman initially equivocated as to whether she wanted to prosecute, but ultimately decided she did.

Shortly after Lemons's interview of Carman, Deputy Hyder received a dispatch regarding the stolen pickup and saw the vehicle; appellant was driving. Hyder, who was in uniform and driving a marked patrol vehicle, began following the pickup, activating his red overhead lights in order to effect a traffic stop.

The truck accelerated, reaching speeds of up to 60 miles per hour in a 25 mile-per-hour zone. Hyder gave chase for approximately one mile, at which point the pickup crashed into the rear of a large semi. Appellant, who suffered an injured leg in the accident, climbed from the pickup truck but did not leave the scene prior to the arrival of Deputy Hyder. Officer Lemons subsequently arrived at the accident scene and recovered Carman's purse from the pickup. At the time Officer Lemons returned the purse to Carman, she did not mention that anything was missing from it, but at trial Carman claimed money was missing from the purse when it was returned.

Appellant disputed Ms. Carman's version of the facts. He claimed that after driving Carman home on the evening of October 14, 1992, she invited him in and he spent the night after she asked him to have a "one night stand"

with her. The next morning he took Carman's keys; Carman did not object once he explained that he needed the pickup to go home to get some clothes. Appellant first noticed that the purse was in the pickup only after he had driven it away from Carman's residence.

DISCUSSION

I.

A.

Vehicle Code section 2800.2 provides in part: "If a person flees or attempts to elude a pursuing peace officer in violation of Section 2800.1 and the pursued vehicle is driven in a willful or wanton disregard for the safety of persons or property, the person driving the vehicle, upon conviction, shall be punished by [imprisonment or by fine or by both imprisonment and fine]."

Vehicle Code section 2800.1 in turn provides: "Any person who, while operating a motor vehicle and with the intent to evade, willfully flees or otherwise attempts to elude a pursuing peace officer's motor vehicle, is guilty of a misdemeanor if *all* of the following conditions exist: . . .

"(a) The peace officer's motor vehicle is exhibiting at least one lighted red lamp visible from the front and the person either sees or reasonably should have seen the lamp.

"(b) The peace officer's motor vehicle is sounding a siren as may be reasonably necessary.

"(c) The peace officer's vehicle is distinctively marked.

"(d) The peace officer's motor vehicle is operated by a peace officer, as defined in Chapter 4.5 (commencing with Section 830) of Title 3 of Part 2 of the Penal Code, *and that peace officer is wearing a distinctive uniform.*" (Italics added.)

At trial, the judge gave the following instruction to the jury on count 2: "The following elements shall be shown. A person evades in willful or wanton disregard of the safety of persons or property, and two, the pursuing peace officer is in a marked partrol vehicle, siren sounding, the patrol

vehicle exhibits at least one red lamp and the person saw or reasonably saw the lamp."[1]

At no point did the judge or counsel for either appellant or respondent indicate to the jury, expressly or otherwise, that conviction on count 2 also required a finding that the peace officer was uniformed.

■ Appellant asserts that cases such as this, in which the jury has entirely failed to consider an element of a charged offense, are governed by a rule of reversal per se. We disagree. Where failure to instruct on an element of the charged offense has not rendered the trial "fundamentally unfair" (*Rose* v. *Clark* (1986) 478 U.S. 570, 577 [92 L.Ed.2d 460, 470, 106 S.Ct. 3101]), harmless error analysis may be appropriate. Such is the case here.

■ While courts have long recognized that for a conviction to stand a jury must find every element of a charged criminal offense beyond a reasonable doubt (e.g., *In re Winship* (1970) 397 U.S. 358, 364 [25 L.Ed.2d 368, 375, 90 S.Ct. 1068] ["the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged"]; *Carella* v. *California* (1988) 491 U.S. 263 [105 L.Ed.2d 218, 109 S.Ct. 2419] (per curiam); *People* v. *Cummings* (1993) 4 Cal.4th 1233 [18 Cal.Rptr.2d 796, 850 P.2d 1]; *People* v. *Dyer* (1988) 45 Cal.3d 26 [246 Cal.Rptr. 209, 753 P.2d 1]), courts have also recognized exceptions to this rule. Among these is the so-called *Cantrell-Thornton* exception, which calls for affirmance when the omission does not concern a " 'material issue presented by the evidence.' " (*People* v. *Thornton* (1974) 11 Cal.3d 738, 769, fn. 20 [114 Cal.Rptr. 467, 523 P.2d 267], cert. denied 420 U.S. 924 [43 L.Ed.2d 293, 95

---

[1]CALJIC No. 12.85 provides in part the following form instruction for Vehicle Code section 2800.2 violations:

". . . . . . . . . . . . . . . . . . . . . . .

"In order to prove a violation of Vehicle Code Section 2800.2, each of the following elements must be proved:

"1. A person, while operating a motor vehicle, willfully fled or otherwise attempted to elude a pursuing peace officer;

"2. Such person did so with the specific intent to evade the pursuing peace officer;

"3. The peace officer's vehicle exhibited at least one lighted red lamp visible from the front;

"4. The person saw or reasonably should have seen the red lamp;

"5. The peace officer's vehicle sounded a siren, as reasonably necessary;

"6. The peace officer's motor vehicle was distinctively marked;

"7. The peace officer's motor vehicle was operated by a peace officer wearing a distinctive uniform; and

"8. The driver of the pursued vehicle drove the vehicle in a willful and wanton disregard for the safety of persons or property."

S.Ct. 1118], quoting *People* v. *Modesto* (1963) 59 Cal.2d 722, 732 [31 Cal.Rptr. 225, 382 P.2d 33], overruled on other grounds by *People* v. *Flannel* (1979) 25 Cal.3d 668, 684, fn. 12 [160 Cal.Rptr. 84, 603 P.2d 1].)

In *People* v. *Cantrell* (1973) 8 Cal.3d 672 [105 Cal.Rptr. 792, 504 P.2d 1256] (overruled on other grounds by *People* v. *Wetmore* (1978) 22 Cal.3d 318, 324, fn. 5 [149 Cal.Rptr. 265, 583 P.2d 1308] and *People* v. *Flannel*, *supra*, 25 Cal.3d 668, 684, fn. 12), the California Supreme Court addressed the trial court's failure to instruct on voluntary manslaughter except as it related to the defendant's claim of diminished capacity. Defendant had been charged with murder after confessing to killing a juvenile who had resisted his sexual advances. On appeal the court rejected appellant's claim that he was entitled to a general manslaughter instruction. The court held that the evidence permitted of no basis for a manslaughter finding except in connection with the diminished capacity defense. (*Id.*, at pp. 684-685.)

*People* v. *Thornton, supra*, 11 Cal.3d 738 (overruled on other grounds by *People* v. *Flannel, supra*, at p. 684, fn. 12), concerned the trial court's failure to instruct the jury on the requirement of asportation on a kidnaping charge. Asportation had been held to constitute an element of the offense in *People* v. *Daniels* (1969) 71 Cal.2d 1119, 1140 [80 Cal.Rptr. 897, 459 P.2d 225, 43 A.L.R.3d 677], a case decided following appellant's conviction but prior to his appeal. The *Thornton* court ruled that because the evidence established the asportation "as a matter of law," and "there [was] no evidence worthy of consideration to the contrary," asportation was not a material issue presented by the evidence. (*People* v. *Thornton, supra*, at p. 769, fn. 20.) Appellant therefore did not have a right to a jury finding on the issue. (*Ibid.*)

The combined effect of *Cantrell* and *Thornton* is to permit affirmance when the element omitted from the jury instructions does not concern " 'a material issue . . . presented by the evidence.' " (*People* v. *Thornton, supra*, 11 Cal.3d at p. 769, fn. 20.) The exception applies in cases in which " 'the parties recognized that [the element] was in issue, presented all evidence at their command on that issue, and . . . the record not only establishes the necessary [element] as a matter of law but shows the contrary evidence not worthy of consideration.' " (*People* v. *Joiner* (1988) 204 Cal.App.3d 221, 224 [251 Cal.Rptr. 63], brackets in original, quoting *People* v. *Garcia* (1984) 36 Cal.3d 539, 556 [205 Cal.Rptr. 265, 684 P.2d 826]; *People* v. *Anderson* (1985) 38 Cal.3d 58, 61-62 [210 Cal.Rptr. 777, 694 P.2d 1149].)

The facts of the instant case place it squarely within the *Cantrell-Thornton* exception. Appellant can hardly claim not to have been on notice as to an expressly enumerated element of the offense charged. With respect

to the evidence presented, the record is clear and uncontradicted on the question whether Officer Hardy was in uniform. The issue was raised only once: in his testimony on direct examination, Officer Hardy responded affirmatively to the prosecutor's question whether he was uniformed at the time he pursued appellant. There was no contradicting testimony or dispute by appellant on this element. Indeed, the defense adopted a trial strategy of conceding guilt on count 2 as a means of securing acquittal on the more serious burglary and theft offenses. In addition to defense counsel's comments in open court that her client was not denying guilt on the evasion charge,[2] appellant himself admitted seeing the patrol car's flashing lights and attempting to elude Officer Hardy because he feared going to jail. In light of this strategy and the facts shown by the record, it is apparent that Vehicle Code section 2800.1, subdivision (d), was a nonmaterial element for the purposes of the *Cantrell-Thornton* exception.

We are aware that there has been some question as to the continued vitality and scope of the *Cantrell-Thornton* exception in light of recent United States Supreme Court cases. After careful review of those cases and their interpretation by California courts, however, we conclude that the exception applies to the instant case.

The California Supreme Court addressed the scope of the *Cantrell-Thornton* exception for the first time in *People* v. *Garcia, supra,* 36 Cal.3d 539. *Garcia* involved failure to instruct the jury that a finding of defendant's intent to kill is required for felony murder special circumstances. In deciding the appropriate standard of review for such error, the *Garcia* court looked for guidance to a line of United States Supreme Court cases culminating in *Connecticut* v. *Johnson* (1982) 460 U.S. 73 [74 L.Ed.2d 823, 103 S.Ct. 969]. In *Johnson* a plurality of the court had held that an instruction to the jury that " 'every person is conclusively presumed to intend the natural and necessary consequences of his act' " (*id.,* at p. 78 [74 L.Ed.2d at p. 829]), amounted to a directed verdict on intent and was therefore reversible per se. The plurality had then gone on to identify as exceptions to the general rule of reversal per se cases in which the defendant had "conceded the issue of intent," and cases in which ". . . the erroneous instruction was given in connection with an offense for which the defendant was acquitted" and "had no bearing on the offense for which he was convicted." (*Id.,* at p. 87 [74 L.Ed.2d at p. 834].)

---

[2]In her opening remarks to the jury, defense counsel stated: "we're not denying the fact that [appellant] is guilty of count two, which is the evading an officer." In her closing argument counsel confirmed this defense strategy. "Now, I'm not going to dispute the evasion of the officer because my client has already testified that that's what he did. He admits to that. That is not at issue here. You can find him guilty on that because he already told you that he is." Defense counsel also nodded agreement to the judge's statement to the jury just prior to deliberations that "the charge of evading the police officer has been in effect admitted to by the defendant."

The *Garcia* court evaluated in light of *Johnson* two additional exceptions to the rule found in California case law: where " 'the factual question posed by the omitted instruction was necessarily resolved adversely to the defendant under other, properly given instructions,' " (36 Cal.3d at p. 555), and the *Cantrell-Thornton* exception. (*Id.*, at pp. 555-557.) Wary of "detract[ing] substantially from the per se character of the high court's rule" in *Johnson*, the *Garcia* court held that the *Cantrell-Thornton* exception applied "only to those cases clearly falling within the ambit" of the reasoning in *Cantrell* and *Thornton* (*Id.*, at p. 557), "pending further guidance from the United States Supreme Court." (*Ibid.*)

That guidance was seemingly provided in *Cabana v. Bullock* (1986) 474 U.S. 376 [88 L.Ed.2d 704, 106 S.Ct. 689], a case concerning an erroneous instruction on defendant's state of mind given at the penalty phase of a murder trial. Distinguishing errors committed at that phase from those committed at the guilt phase, the court noted: ". . . a jury's conviction cannot stand if the instructions provided the jury do not require it to find each element of the crime under the proper standard of proof." (*Id.*, at p. 384 [88 L.Ed.2d at p. 715].)

Had *Cabana* remained the last word on the rule of per se reversal it would appear doubtful appellant's conviction could be affirmed under the *Cantrell-Thornton* exception, despite the overwhelming evidence of guilt, which appellant effectively conceded. However, after two subsequent cases, *Rose v. Clark, supra*, 478 U.S. 570, and *Pope v. Illinois* (1987) 481 U.S. 497 [95 L.Ed.2d 439, 107 S.Ct. 1918], the obstacle posed by *Cabana* to the validity of the *Cantrell-Thornton* exception "seems to have been removed." (*People v. Joiner, supra*, 204 Cal.App.3d at p. 225.)

In *Rose* the court faced the question whether the rule requiring per se reversal necessarily applied to *Sandstrom* error, in which an erroneous instruction to the jury on an element of a charged offense impermissibly shifts the burden of proof on that element. (*Sandstrom v. Montana* (1979) 442 U.S. 510, 520 [61 L.Ed.2d 39, 48-49, 99 S.Ct. 2450].) *Rose* declined to extend the per se reversal rule that far, holding that it should be reserved for those errors "which necessarily render a trial fundamentally unfair" (*Rose v. Clark, supra*, 478 U.S. at p. 577 [92 L.Ed.2d at p. 470]), such as failure to provide a trial before an impartial judge and jury and failure to provide counsel to assist the defendant. (*Id.*, at pp. 577-578 [92 L.Ed.2d at pp. 470-471].) Not only did the court omit instructional error from this list; it stated that where defendant had counsel and was tried by an impartial judge and jury, there was "a strong presumption that any other errors that may have occurred are subject to harmless error analysis." (*Id.*, at p. 579 [92 L.Ed.2d at p. 471].)

*Pope* v. *Illinois, supra,* 481 U.S. 497 concerned an instruction to the jury to apply the wrong standard in reviewing allegedly obscene material. The court applied *Chapman* harmless error analysis and stated in a footnote: "To the extent that cases prior to *Rose* [v. *Clark*] may indicate that a conviction can never stand if the instructions provided the jury do not require it to find each element of the crime under the proper standard of proof, see, e.g., *Cabana* v. *Bullock* [citation], after *Rose,* they are no longer good authority." (*Pope* v. *Illinois, supra,* 481 U.S. at pp. 503-504, fn. 7 [95 L.Ed.2d at p. 447].)

In *People* v. *Lee* (1987) 43 Cal.3d 666 [238 Cal.Rptr. 406, 738 P.2d 752], the California Supreme Court applied harmless error analysis after acknowledging that conflicting instructions "which appear to require a specific intent to kill but which eliminate the requirement where implied malice is found, are closely akin to instructions which completely remove the intent issue from the jury's consideration." (*Id.,* at p. 674.) Adverting to *Rose* v. *Clark,* the court nevertheless ruled that the error was "not so serious as to invoke an automatic reversal rule" because it was not one "which either 'aborted the basic trial process [citation], or denied it altogether. [Citation.]' " (*Ibid.,* citing *Rose* v. *Clark, supra,* brackets in original.)

In *People* v. *Wallace* (1992) 11 Cal.App.4th 568 [14 Cal.Rptr.2d 67] (Fifth Dist.), the court directly addressed the question whether failure to instruct the jury on an element of a charged offense was subject to the rule of reversal per se or harmless error analysis. In *Wallace* the trial court had failed to instruct the jury that defendant's touching of the victim had to be "lewd and lascivious" in order to convict him of committing a lewd and lascivious act upon a minor. (Pen. Code, § 288, subd. (c).) Acknowledging that "removal of an essential element of the crime charged from the jury's consideration normally constitutes a denial of federal due process principles" (11 Cal.App.4th at p. 580), the court held that in the wake of *Rose* v. *Clark, supra,* harmless error analysis, and not the rule of reversal per se, now applied to such errors in California. (*Wallace, supra,* at p. 580; see *People* v. *Dyer, supra,* 45 Cal.3d 26, 63, citing *Rose* v. *Clark, supra,* 478 U.S. at p. 583 [92 L.Ed.2d at p. 474], in stressing that application of the harmless error standard now turns on whether the record taken as a whole establishes that the error was harmless beyond a reasonable doubt.)

In *People* v. *Joiner, supra,* 204 Cal.App.3d 221, the court held that the *Cantrell-Thornton* exception applied where the judge had failed to instruct the jury that penetration was an element of sodomy. Noting that both parties recognized penetration to be an element of the offense and that the evidence on penetration was clear and uncontradicted (*id.,* at p. 224), the court applied

the exception after concluding that it remained good law in the wake of *Rose* v. *Clark, supra,* and *Pope* v. *Illinois, supra.* (*Id.,* at pp. 224-227.)

Appellant contends *People* v. *Cummings, supra,* 4 Cal.4th 1233, holds that complete omission of an element of an offense from jury instructions is reversible per se. *Cummings,* however, does not stand for so sweeping a proposition. In *Cummings* the court reversed appellant's conviction of robbery (Pen. Code, § 211) because the trial court had failed to instruct the jury on four of the five elements of that offense. (4 Cal.4th at p. 1312.) The court based its decision not to apply harmless error analysis in part on the "clear distinction" the United States Supreme Court had drawn in its recent decisions "between instructional error that entirely precludes jury consideration of an element of an offense and that which affects only an aspect of an element." (*Id.,* at p. 1315.) The court further elaborated, however, that "none [of those Supreme Court cases] suggests that a harmless error analysis may be applied to instructional error which withdraws from jury consideration *substantially all* of the elements of an offense." (*Ibid.,* italics added.)

Appellant's interpretation of *Cummings* would compel us to disregard this last observation, which indicates that the nature of the omission is signficant: if omission of *any* element is reversible per se, there would have been no reason for the Supreme Court to stress that the error before it removed *substantially all* elements from jury consideration. Accordingly, we read *Cummings* to stand for the more limited proposition that omission of an element of an offense is instructional error subject to the principles of *Rose* v. *Clark.* (*People* v. *Cummings, supra,* 4 Cal.4th at pp. 1312-1314.) Jury instructions that omit four of five elements of a seriously contested offense clearly require application of the rule of reversal per se. (*People* v. *Cummings, supra,* 4 Cal.4th at p. 1315.) That is a very different case, however, from the one at bar, where jury instructions omitted just one element of an offense and the defendant effectively conceded guilt of that offense. Unlike the situation in *Cummings,* the omission here in no way implicated the fundamental fairness of the trial process. (*Rose* v. *Clark, supra,* 478 U.S. at p. 577 [92 L.Ed.2d at p. 470].)

Based on the foregoing analysis we conclude that appellant's trial met the standard of fairness set forth in *Rose* v. *Clark, supra,* 478 U.S. 570. Appellant does not contend, nor does the record suggest, that the judge or jury was biased or that appellant lacked effective counsel. Nor does appellant claim that the court omitted a contested issue from the jury's consideration or that he was denied the opportunity to demonstrate his innocence of the charge in question. To the contrary, as has been stated, appellant pursued a trial strategy of effectively conceding guilt of the offense of evading a police

officer. In the wake of that strategy's success, appellant now attempts to capitalize on the trial court's nonmaterial error in the hope of contesting the charge under more favorable conditions. Under these circumstances, and considering that the element of the offense that is at issue was indisputably established by the evidence, reversal of appellant's conviction is not required by the principle of fundamental fairness.

Accordingly, we hold that where defendant makes an informed, strategic decision to concede guilt of an offense, the trial court erroneously omits an element of the offense in its instructions to the jury, and the omitted element is nonmaterial for the purposes of the *Cantrell-Thornton* exception, the error is not reversible and the conviction should be affirmed.

## B.

■ Appellant next contends that the trial court's failure to define sua sponte the terms "willful" and "wanton" as they were used in the instruction on Vehicle Code sections 2800.1 and 2800.2, quoted *ante*, footnote 1, was reversible error. ■ In general the trial court has a sua sponte duty to give amplifying or clarifying instructions " 'where the terms used [in an instruction] have a technical meaning peculiar to the law.' " (*People* v. *Purcell* (1993) 18 Cal.App.4th 65, 71 [22 Cal.Rptr.2d 242], quoting *People* v. *Earnest* (1975) 53 Cal.App.3d 734, 744 [126 Cal.Rptr. 107]; *People* v. *Anderson* (1966) 64 Cal.2d 633, 639 [51 Cal.Rptr. 238, 414 P.2d 366].) Conversely, "[a] trial court has no sua sponte duty to give amplifying or clarifying instructions . . . where the terms used in the instructions given are 'commonly understood by those familiar with the English language.' [Citation.]" (*People* v. *Kimbrel* (1981) 120 Cal.App.3d 869, 872 [174 Cal.Rptr. 816].)

■ Appellant proffers no "technical" definitions of the terms "willful" and "wanton," nor does he cite authority for the proposition that they carry a technical meaning. Appellant instead argues that "willful" and "wanton" require clarification because they are more arcane terms than "assault," "force," and "extortion," which have been held to require clarification. (*People* v. *McElheny* (1982) 137 Cal.App.3d 396, 403 [187 Cal.Rptr. 39]; *People* v. *Pitmon* (1985) 170 Cal.App.3d 38, 52 [216 Cal.Rptr. 221]; *People* v. *Hill* (1983) 141 Cal.App.3d 661, 668 [190 Cal.Rptr. 628].) The terms "assault," "force" and "extortion," however, were each held to require clarification because the legal definition of them as used in the statute under which the defendant was being prosecuted differed from the definition that might be ascribed those terms in common parlance. No such situation exists with respect to the terms "willful" and "wanton."

■ Webster's dictionary defines "willful" as: "1: obstinately and often perversely self-willed 2: done deliberately: INTENTIONAL." (Webster's New Collegiate Dict. (1977) p. 1341.) It gives as one of the definitions of "wanton": "3a: MERCILESS, INHUMANE . . . b: having no just foundation or provocation: MALICIOUS." (*Id.*, at p. 1318.) CALJIC No. 12.85 (quoted in part, *ante*, fn. 1) defines the phrase "willful and wanton"[3] as "an intentional and conscious disregard for the safety of . . . persons or property. It does not necessarily include an intent to injure." (CALJIC No. 12.85 (1993 New) (5th ed. 1988 pocket pt.) p. 82.) This definition of "willful and wanton" is taken from *People* v. *Schumacher* (1961) 194 Cal.App.2d 335 [14 Cal.Rptr. 924], which defined the word "willful" in the offense of reckless driving (former Veh. Code, § 23103, repealed by Stats. 1978, ch. 790, § 3, p. 2529) as "intentional" and the word "wanton" as used in that statute as "includ[ing] the elements of consciousness of one's conduct, intent to do or omit the act in question, . . . and reckless disregard of consequences." (*People* v. *Schumacher, supra,* 194 Cal.App.2d at p. 340, internal quotation marks omitted; *People* v. *McNutt* (1940) 40 Cal.App.2d Supp. 835, 837 [105 P.2d 657].)

■ We find no meaningful difference between Webster's definitions and those applicable to Vehicle Code section 2800.2. Both Webster's and CALJIC No. 12.85 ascribe to the word "willful" the meaning "intentional." CALJIC No. 12.85 also employs the term "conscious," but we discern no additional content this term supplies to the concept of willful disregard. Similarly, the word "wanton" as explicated by *Schumacher* adds nothing to the meaning of "malicious" or "cruel." In order for the jury to have found appellant's acts cruel or malicious, they must have found the acts were intentionally performed with a consciousness of and disregard for their potentially dangerous consequences.

*People* v. *Dellinger* (1989) 49 Cal.3d 1212 [264 Cal.Rptr. 841, 783 P.2d 200] supports the conclusion that "wanton" is not a technical legal term. In *Dellinger* the California Supreme Court addressed the question whether the use of "wanton" in CALJIC No. 8.11 allowed the jury to find implied malice without determining whether the defendant subjectively appreciated the life-threatening risk of his conduct. The instruction stated in part: " 'Malice is implied when the killing results from an intentional act involving a high degree of probability that it will result in death, which act is done for a base, antisocial purpose and with a wanton disregard for human life.' " (*Id.*, at p. 1217, quoting CALJIC No. 811 (1983 rev.) (4th ed. pocket pt.).) The court

---

[3]CALJIC No. 12.85 erroneously provides that the jury must find the defendant drove in a willful *and* wanton manner in order to be convicted under Vehicle Code section 2800.2. The statute provides that driving in a willful *or* wanton manner is sufficient to satisfy this element of the offense.

acknowledged that, "by contemporary standards," the phrase "wanton disregard for human life" had become a superfluous charge in light of the rest of the instructions (*id.*, at p. 1221) but concluded that this definition of malice nevertheless "would be understood by a reasonable juror to independently require a finding of the defendant's subjective awareness of the life-threatening risk." (*Ibid.*) Although *Dellinger* recognized the term "wanton" "is not in common use in contemporary daily speech" (*Ibid.*), it nowhere suggested a definition of the term different from its nonlegal definitions, but noted that it is " 'defined . . . in the common law as involving an element of "consciousness of one's conduct" and "realization of the probable injury to another." [Citations.]' " (*Id.*, at p. 1220.)

In support of his contention that "willful" and "wanton" are technical terms with a peculiar legal meaning, appellant refers us to CALJIC No. 16.840, which defines those terms for the purposes of the offense of reckless driving (Veh. Code, § 23103), and to Penal Code section 7, defining "willful" for the purposes of the Penal Code generally. (Pen. Code, § 7.)[4] Appellant argues that the fact the CALJIC committee and the Legislature found it necessary to define these terms buttresses the conclusion that they carry a technical meaning.

Appellant's logic is flawed. The issue is not whether the terms have been defined, but how. Neither CALJIC No. 16.840 nor Penal Code, section 7 supplies definitions of these terms that are foreign to common usage. As we have stated, neither term as used in Vehicle Code section 2800.2 embraces a technical legal meaning.

## C.

Appellant objects finally to the following comment by the judge to the jury: "At this time, however, and for the purpose of assisting you in properly deciding the case, I will comment on the evidence and testimony and believability of any witness. The only comments I have to make, [*sic*] the charge of evading a police officer has been in effect admitted by the defendant." Appellant's attorney nodded affirmatively in response to this comment.

---

[4]CALJIC No. 16.840 provides in part: " 'willfull', as used in this instruction, means an intentional disregard for the safety of others. . . . [¶] '[W]anton', as used in this instruction, includes the elements of consciousness of conduct, intent to do or omit the act in question, realization of the probable injury to another, and reckless disregard of the consequences." (5th ed. 1988, p. 415.)

Penal Code section 7 provides in part: "1. The word 'willfully,' when applied to the intent with which an act is done or omitted, implies simply a purpose or willingness to commit the act, or make the omission referred to."

Appellant contends that the comment effectively directed a verdict for respondent on the charge of evading a police officer. (Veh. Code, § 2800.2.) We disagree.

A trial judge's comment on the "ultimate question" of guilt or innocence is prohibited (*People* v. *Cook* (1983) 33 Cal.3d 400, 412-413 [189 Cal.Rptr. 159, 658 P.2d 86], overruled on other grounds in *People* v. *Rodriguez* (1986) 42 Cal.3d 730, 770 [230 Cal.Rptr. 667, 726 P.2d 113]) and has been held in certain circumstances to constitute a directed verdict (*People* v. *Brock* (1967) 66 Cal.2d 645, 649 [58 Cal.Rptr. 321, 426 P.2d 889] [judge's comment that, in the opinion of the court, the evidence established guilt of the defendant beyond a reasonable doubt amounted to a directed verdict, even though comment accompanied by instructions admonishing jury to exercise its independent judgment].)[5] The judge here, however, made no such comment. Rather, he merely referred to defense counsel's prior statements to the effect that the defendant's guilt of the evasion charge was not in issue. (See remarks and conduct of defense counsel, summarized *ante*, fn. 2.) The comment made no direct reference to evidence presented at trial, nor did it express the judge's view as to appellant's guilt.

Additionally, immediately prior to the comment in question the judge gave the following instruction: "I have not intended by anything I have said or done or by any question I may have asked to suggest what you should find to be the facts or that I believe or disbelieve any witness. If anything I have said or done has seemed to so indicate, disregard it and form your own conclusion." This instruction reiterated to the jury its duty to find the facts in question and stressed that the judge's comments could not relieve the jury of exercising its independent judgment in doing so.

■ In finding that the trial court's comment did not amount to a directed verdict we do not mean to suggest that the comment was proper. A judgment generally will not be reversed, however, where the defendant fails to object to the error at trial and an admonition could have cured the error. (*People* v. *Terry* (1970) 2 Cal.3d 362, 398 [85 Cal.Rptr. 409, 466 P.2d 961]; *People* v. *Boyette* (1988) 201 Cal.App.3d 1527, 1538 [247 Cal.Rptr. 795].) In the instant case, appellant does not contend that the comment was so serious as to render any attempt at cure futile, nor do we see any basis for so finding. Defense counsel not only failed to object to the judge's comment, but

[5]*People* v. *Cook, supra*, 33 Cal.3d at page 413, footnote 13, overruled the portion of *Brock* that indicated a judge may comment on the ultimate question of guilt or innocence where the evidentiary basis for the comment is explained to the jury.

concurred with the judge's assessment of the case to that point. Appellant waived his claim of error.[6]

II.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

The conviction and fine are affirmed.

Smith, J., and Phelan, J., concurred.

A petition for a rehearing was denied October 24, 1994, and appellant's petition for review by the Supreme Court was denied January 5, 1995.

---

[6]Since we have found only one error properly preserved for appeal, we need not address appellant's contention that cumulative error at trial requires reversal.

*See footnote, *ante*, page 1347.