[No. A081058. First Dist., Div. Four. Mar. 22, 1999.]

THE PEOPLE, Plaintiff and Respondent, v.
HENRY CALVIN AUBREY III, Defendant and Appellant.

**[Opinion certified for partial publication.*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts II.D. and II.E.

## COUNSEL

Gerald William McGee, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Catherine A. Rivlin and Kenneth C. Young, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**SEPULVEDA, J.**—Appellant Henry Calvin Aubrey III was charged with one felony count of carrying a concealed "dirk or dagger." (Pen. Code, § 12020, subds. (a), (c)(24)).[1] The information also alleged that, under California's "Three Strikes" law (§ 667, subds. (b)-(i)), appellant had one

---

[1] All statutory references are to the Penal Code unless otherwise indicated. In addition, we will use the abbreviated references "section 12020(a)" to refer to section 12020, subdivision (a), and "section 12020(c)(24)" to refer to section 12020, subdivision (c)(24).

"strike" prior felony conviction.[2] In a bifurcated trial, the jury found appellant guilty as charged and found true the allegations about the prior "strike." Appellant filed a motion for a new trial on the ground that defense counsel was ineffective for conceding that the objects in appellant's possession met the statutory definition of "dirk or dagger." After an evidentiary hearing was held with new counsel for appellant, the motion was denied. The trial court sentenced appellant to state prison for the midterm of two years (§ 18), doubled pursuant to sections 667, subdivision (d), and 1170.12, subdivisions (b) and (c), for a total term of four years.

On appeal, Aubrey contends that his trial counsel was ineffective, that the instructions were erroneous, and that presentence conduct credits should have been awarded. We affirm, but remand for calculation of presentence credits.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. *Trial Evidence.*

On March 18, 1997, Ben Guidotti worked the night shift at Flying J, Inc., a gas station and convenience store. At approximately 2:00 a.m., appellant entered the store and asked Guidotti to call the police to arrest appellant. At first Guidotti declined, but he made the call when appellant attempted to steal a package of cigarettes. During the 30 to 45 minutes between the call and the arrival of the police, Guidotti observed appellant from all angles. At no time did Guidotti see a knife. Appellant appeared to be intoxicated, but not "stumbling drunk." Guidotti noticed that James R. Bingham, a customer, had fallen to the floor of the store, and it appeared to Guidotti that appellant had caused the fall.

Police Sergeant James D. Manos was dispatched to the Flying J at approximately 2:05 a.m. on March 18, 1997, on the basis of a disturbing the peace call. No mention was made of a knife or other weapon. Throughout the evening, the police had received calls stating that appellant was acting aggressively and was in several fights.

Upon reaching a well-illuminated parking lot, Manos observed appellant confronting Bingham. Appellant's hands were in a "fighting stance" and he was intoxicated, but "not falling down drunk." No knife or other weapon was visible. Manos ordered appellant to "knock it off" and "calm down."

---

[2]After a preliminary hearing on April 3, 1997, the magistrate declined to bind appellant over for trial on an additional misdemeanor charge under section 12024, for allegedly carrying a deadly weapon upon his person with intent to assault.

Initially, appellant acted aggressively toward the officer. Eventually, he reluctantly complied with the orders and was handcuffed without physical resistance.

As Manos started putting the handcuffs on appellant, Bingham said, "Watch out. He's got some knives on him." After completing the handcuffing process, Manos lifted up appellant's sweatshirt and removed two knives from his person. The knives were in a single sheath which was attached to appellant's belt and placed inside appellant's pocket. Appellant's sweatshirt covered the handles of the knives.

At trial, Manos described the knives as follows: "A little bit scratched, not too bad. They're not rusted, not real sharp on the edges like for skinning or anything. Appear to be more for a stabbing instrument or throwing." According to Manos, the knives could be legally purchased and used to practice knife throwing.

We have examined the knives and the sheath. The knives are flat, nine inches long, approximately one inch wide, and approximately one-eighth of an inch thick. They are all metallic and well balanced, with a "blade" that is symmetrically tapered to a point on one end. There is no separate "handle" as such, but the nonblade end of the knife has curved edges in which the thumb and index finger nest comfortably when the knife lies in the palm of the hand. The tapered "blade" is sharpened over a length of approximately three inches on both edges. Each knife has imprinted on one side a small emblem in the shape of a knife with the words "On Target" and a small target symbol within the outline of the emblem. The knives fit neatly into a nine-and-a-half-inch sheath, which has a two-and-a-half-inch slot through which a belt could easily pass. The sheath appears to have been designed with slots to hold three knives of the size and shape of those that were in evidence.

The centerpiece of the defense was that the knives were not "purposely concealed." Bingham testified for the defense that he saw the handle and the top part of the blade of a knife on appellant's person when Manos handcuffed appellant, and that the knife was either in a sheath or attached to appellant's belt. Also, defense counsel arranged for the jury to view appellant wearing the sweatshirt and moving his arms and body.

B.  *Closing Argument and Jury Instructions.*

During closing argument, Deputy Public Defender James Steinberg laid out the defense theory of the case as follows: "There are two substantial

issues which you need to deal with in this case: One is the issue of concealment, and the other is the issue of purpose or purposefulness. [¶] Now, I think it would be difficult and unpersuasive to suggest that these ugly things couldn't stab somebody. . . . Of course, they're something that could stab somebody and inflict great bodily injury. I don't think that's what they were designed for. Sergeant Manos described them as throwing knives. I guess that's what people buy them for. I know that some of you are sensitive to the verbal nature of a—of a weapon of a type like that, which you don't really use it for hunting, you don't really use it for whittling, it's just for essentially a martial arts or something which could, in fact, be used aggressively. It has that potential. [¶] Sure, I don't expect any of you are going to look at that and say 'Oh, that's just a little something or other.' But the fact of the matter is that the character of the weapon, once you get over the fact that it is technically a dirk or dagger, really doesn't make any difference. . . . [¶] . . . Okay. So what I am going to ask you to do is try not to be hung up on the fact that these aren't weapons that most people necessarily would ordinarily carry. The fact is they're legal. The fact is you can carry them. [¶] What we're dealing with here is the law, so I do want you to remember these weapons are legal, and overcome any bad feelings or revulsion you might have about the fact that these aren't the kinds of weapons you might have in your house, or the kind of weapons that you or your relatives might employ. That is absolutely irrelevant. It is irrelevant, because as long as it can be used for stabbing, it's considered to be a dirk or dagger." Defense counsel continued, "No matter how reprehensible his behavior was that night, no matter how ugly these knives are, if he doesn't purposefully conceal them, if you have a reasonable doubt as to that, he, by law, is entitled to a verdict of not guilty."

At the request of defense counsel, the jury was instructed with CALJIC No. 4.45,[3] which describes the defense of "accident"; CALJIC No. 12.41,[4] which sets forth the elements of the offense of carrying a concealed dirk or dagger and provides the statutory definition of the latter terms; and a special

---

[3]The modified version of CALJIC No. 4.45 delivered to the jury in this case provided: "When a person commits an act by accident, under circumstances that show no criminal intent, he does not thereby commit a crime."

[4]The modified version of CALJIC No. 12.41 delivered to the jury in this case provided: "Defendant is accused of having violated section 12020, subdivision (a) of the Penal Code, a crime. [¶] Every person who carries concealed upon his person any dirk or dagger is guilty of a violation of Penal Code section 12020, subdivision (a), a crime. [¶] The words 'dirk' and 'dagger' are used synonymously and both mean a knife or other instrument with or without a handguard, that is capable of ready use as a stabbing weapon that may inflict great bodily injury or death. [¶] In order to prove this crime, each of the following elements must be proved: [¶] 1. A person carried a dirk or dagger; [¶] 2. The weapon was substantially concealed upon his person; and [¶] 3. The person knew he was carrying the weapon. [¶] A knife carried in a sheath which is worn openly suspended from the waist of the wearer is not

instruction[5] stating that the prosecution has the burden of proof as to concealment and the other elements of the charged offense. Defense counsel did not request CALJIC No. 12.42,[6] regarding "intended use" as determinative of the character of the concealed instrument as a "weapon," or any comparable special instruction. On the issue of "criminal intent," the court apparently rejected the prosecutor's request for the definition of "specific intent" set forth in CALJIC No. 3.31, and instead gave CALJIC No. 3.30, which defines the concept of "general intent."[7]

On June 3, 1997, appellant was found guilty of a violation of section 12020(a). After a further hearing on June 4, 1997, the jury found true the allegation that on or about May 18, 1987, appellant was convicted of a violation of section 245, subdivision (a)(1), assault with a deadly weapon, with great bodily injury.

### C.  *Motion for New Trial.*

On July 9, 1997, the court appointed Conflict Counsel Glenn Brown to investigate a possible motion for new trial. On October 8, 1997, conflict counsel filed a motion for new trial, claiming that trial counsel had failed to present a potentially meritorious defense and that appellant was thus denied effective assistance of counsel and a fair trial.

At a hearing on appellant's new trial motion on October 31, 1997, Steinberg testified as follows: He had served as a public defender for 20

---

a concealed weapon." (Brackets omitted.) The last paragraph of this instruction derives from section 12020, subdivision (d).

[5]This special instruction provided: "The People have the burden of proof as to all elements of the alleged offense. Concealment is one such element." As authority for this instruction, appellant cited *People* v. *Hall* (1980) 28 Cal.3d 143, 159-160 [167 Cal.Rptr. 844, 616 P.2d 826].

[6]The 1996 version of CALJIC No. 12.42, which was in effect at the time of appellant's trial, provides: "In determining if the instrument or object in this case was a weapon of the kind within the law as stated, you may consider the circumstances attending any possession of the instrument or object by the defendant, such as the time and place of its possession; the destination of the possessor; any alteration of the object from its standard form; and evidence, if any, indicating its intended use by the possessor for a dangerous rather than a harmless purpose." However, at the time, the Use Note for CALJIC No. 12.42 further provided that "This instruction should not be given when an alleged dirk or dagger is involved because of the legislative definition of dirk or dagger found in Penal Code section 12020, subdivision (c)(24)." (Use Note to CALJIC No. 12.42 (6th ed. 1996 bound vol.) p. 86.)

[7]The modified version of CALJIC No. 3.30 delivered to the jury in this case provided: "In the crime charged, there must . . . exist a union or joint operation of act or conduct and general criminal intent. General intent does not require an intent to violate the law. When a person intentionally does that which the law declares to be a crime, he is acting with general criminal intent, even though he may not know that his act or conduct is unlawful." (Brackets omitted.)

years. After reviewing the applicable statute, statutory history, case law, knives and all the other evidence, he made a tactical decision that no reasonable jury would decide the knives were not "dirks" or "daggers" under the statute. The best defense was that they were not purposely concealed. Steinberg thought it would ruin the credibility of the defense to argue that the knives were not the type of stabbing weapons outlawed by the current statute. He believed that the defense was best served by minimizing the amount of time the knives were viewed by the jury. Steinberg said appellant had never mentioned using the knives for target practice and did not supply any helpful information regarding his use of the knives or his activities on the day of the crimes. Steinberg believed that any sharp, fixed-blade knife met the statutory definition. In accordance with this tactical choice, and to stay away from the issue of appellant's intent because of "[Evidence Code section] 1101-type concerns," Steinberg did not request CALJIC No. 12.42.

Knife salesman Louis E. Watt testified that the knives found in appellant's possession are throwing knives, which do not have sharp edges. Watt further testified that the knives were manufactured by a company called "On Target," bear an emblem of a throwing knife with a target on it, and are openly sold to members of the public for target practice.

Appellant testified that he told Steinberg the knives were purchased on the day before the arrest for target practice; that he used them earlier in the day for target practice with his brother-in-law; and that they were in his possession at the time of the arrest because he had not yet returned home. Appellant claimed that he had purchased three knives, along with a sheath to hold them, but that he lost one of the knives in the bushes at his sister's house. Appellant further testified that he bought the knives to try to learn how to throw them, and never intended to use them for stabbing. On cross-examination, appellant was forced to admit that his 1987 conviction for assault with a deadly weapon was for "stabbing somebody with a knife," and that the jury had rejected his claim of self-defense in connection with that incident.[8]

Both in his motion for new trial and during oral argument on that motion, Brown pointed out that Steinberg had conceded the "dirk or dagger" issue at

---

[8]On the first day of trial, the prosecutor made a motion, apparently pursuant to *People* v. *Beagle* (1972) 6 Cal.3d 441 [99 Cal.Rptr. 313, 492 P.2d 1], and *People* v. *Castro* (1985) 38 Cal.3d 301 [211 Cal.Rptr. 719, 696 P.2d 111], seeking permission to use appellant's prior conviction for impeachment purposes should appellant decide to testify. At Steinberg's request, however, the court reserved ruling on the prosecutor's motion until after the close of the People's case. Before the prosecutor began his case-in-chief, however, Steinberg objected that the moral turpitude associated with the prior conviction was not clear, and that admitting it for impeachment would be more prejudicial than probative because appellant was "accused of possessing knives, even though there is no evidence to show he was attempting to use the knives." After the prosecutor completed presentation of his case-in-chief, the trial court granted the prosecutor's motion.

the preliminary hearing, even though Sergeant Manos said he had confiscated "two silver what I would call throwing knives." Steinberg explained this concession, saying that under the case law, any knife qualifies as a dirk or dagger. Brown claimed the concession was improper at the preliminary hearing, but all the more so at trial given that the magistrate had refused to bind appellant over for trial on a charge under section 12024, for possession of a deadly weapon with intent to assault. In that regard, the magistrate had specifically stated: "I did not find any intent to use this weapon to assault."

The trial court denied the motion for a new trial. It ruled that although "under the new statutory definition, the circumstances of possession may be relevant to the trier of fact in determining whether the statute has been violated[,] . . . the Court does not believe that the objects possessed by [appellant], which were obviously knives, could reasonably be argued to fall outside the statute."

## II. DISCUSSION

### A. Definition of "Dirk or Dagger" Under 1995 Version of Section 12020(c)(24).

As both of appellant's primary contentions involve interpretation of the 1995 amendment to the statutory definition of "dirk or dagger" found in section 12020(c)(24), we shall begin our discussion there. Section 12020(a) makes it illegal for any person to carry "concealed upon his or her person any dirk or dagger." The statute itself did not attempt to define the terms "dirk" or "dagger" until its amendment in 1993 and up to that time courts tended to apply a broad definition indicating, for example, that the terms are used interchangeably and may include any weapon fitted primarily for stabbing. (*People* v. *Mowatt* (1997) 56 Cal.App.4th 713, 717 [65 Cal.Rptr.2d 722] (*Mowatt*).)[9] ■ Whether an instrument found on the defendant's person is a "dirk or dagger" has long been deemed to be an element of the offense defined by section 12020(a) (see *People* v. *Pettway* (1991) 233 Cal.App.3d 1067, 1072 [285 Cal.Rptr. 147]) and, thus, a question of fact for the jury (*People* v. *Bain* (1971) 5 Cal.3d 839, 850-851 [97 Cal.Rptr. 684, 489 P.2d 564]; *In re Quintus W.* (1981) 120 Cal.App.3d 640, 643 [175 Cal.Rptr. 30]; cf. *People* v. *Pruett* (1997) 57 Cal.App.4th 77, 84 [66 Cal.Rptr.2d 750]

---

[9]The most common formulation of the case law definition was stated in *People* v. *Ruiz* (1928) 88 Cal.App. 502 [263 P. 836], as follows: "A dagger has been defined as any straight knife to be worn on the person which is capable of inflicting death except what is commonly known as a 'pocket-knife.' Dirk and dagger are used synonymously and consist of any straight stabbing weapon, as a dirk, stiletto, etc. (Century Dict.) They may consist of any weapon fitted primarily for stabbing." (*Ruiz, supra,* at p. 504; see also *Mowatt, supra,* 56 Cal.App.4th at p. 717.)

[while a knife is not an inherently dangerous or deadly instrument as a matter of law, it may assume such characteristics, depending upon the manner in which it is used, and there arises a mixed question of law and fact which the jury must determine under proper instructions from the trial court]).[10]

In 1993, the Legislature set forth the first statutory definition of "dirk or dagger," one more restrictive than that developed in earlier case law: "[A] 'dirk' or 'dagger' means a knife or other instrument with or without a handguard *that is primarily designed, constructed, or altered to be a stabbing instrument designed to inflict great bodily injury or death.*" (Former § 12020(c)(24), as enacted by Stats. 1993, ch. 357, § 1, italics added.)

In 1995, this statutory definition was altered to read as follows: "As used in this section, a 'dirk' or 'dagger' means *a knife* or other instrument with or without a handguard *that is capable of ready use as a stabbing weapon that may inflict great bodily injury or death.*" (§ 12020(c)(24), as amended by Stats. 1995, ch. 128, § 2, italics added.) Appellant contends that this latter

---

[10]A few cases decided before the 1993 implementation of a statutory definition observed that "Depending on its characteristics, an instrument may be a dagger *as a matter of law* or it may be a dagger as a matter of fact for the trier to find." (*People* v. *Pettway, supra,* 233 Cal.App.3d at p. 1070, italics added; *In re Quintus W., supra,* 120 Cal.App.3d at pp. 644-645; see also *People* v. *Cabral* (1975) 51 Cal.App.3d 707, 711-712 [124 Cal.Rptr. 418] [pounded bedspring with a pointed tip fashioned by county jail inmate was held to be a dirk or dagger as a matter of law because it was designed and was in fact used to stab fellow inmate]; *People* v. *McClure* (1979) 98 Cal.App.3d Supp. 31, 32-33 [160 Cal.Rptr. 83] [belt buckle knife was, as a matter of law, a dirk or dagger for purposes of section 12020 because its "only practical use is for stabbing"].) However valid that observation might be in a probation revocation case such as *Pettway,* or in a juvenile proceeding under section 602 of the Welfare and Institutions Code as in *Quintus W.,* it is problematic where, as here, the defendant has a constitutional right to have a jury determine, under proper instructions, each element of the offense. (See *People* v. *Flood* (1998) 18 Cal.4th 470, 480-482 [76 Cal.Rptr.2d 180, 957 P.2d 869].) We further note that, in each of the above cited cases, the courts' statements about the instrument being a dirk or dagger "as a matter of law" were either entirely gratuitous, or went well beyond what was necessary to decision of the issues presented. (*Pettway, supra,* 233 Cal.App.3d at p. 1069 [issue presented was whether there was substantial evidence to support trial court finding that a particular type of knife was a dirk or dagger]; *In re Quintus W., supra,* 120 Cal.App.3d at pp. 644-645 [challenge to trial court finding of fact on issue whether steak knife carried by juvenile in his back pocket "for protection" was a dirk or dagger under definition of those terms as developed in the case law]; *People* v. *Cabral, supra,* 51 Cal.App.3d at pp. 711-712, 719-720 [issue was whether defendants were prejudiced by the trial court's failure to instruct on the definition of "dirk or dagger" where it was undisputed that flattened, sharpened piece of bedspring, with a handle made by wrapping a shoelace around the top three inches was, in fact, used to stab a fellow inmate]; *People* v. *McClure, supra,* 98 Cal.App.3d at pp. Supp. 32-33 [issue was whether municipal court abused its discretion in ruling after preliminary hearing that belt buckle knife, which had a fixed blade of two and a half to three inches in length and a handle doubling as the belt buckle, *was not,* as a matter of law, a dirk or dagger for purposes of section 12020].)

version of the statute, applicable in the present case, must be interpreted to include an element of intent to use the instrument as a weapon, in order to not to be found to be unconstitutionally overbroad and vague. We agree.

As the *Mowatt* court noted, section 12020(a) has long been held to proscribe possession of some instruments which are inherently dangerous and others which can be used as weapons despite their innocent purpose or design. (56 Cal.App.4th at p. 718.) " 'In pure usage the dagger, always a weapon, should have a symmetrical tapering blade with two, three, or even four edges and a sharp point. It is primarily designed for thrusting or stabbing. . . .' " (*Id.* at p. 719.) However, by enacting section 12020(a), the *Mowatt* court noted, the Legislature " 'sought to outlaw the classic instruments of violence and their homemade equivalents; the Legislature sought likewise to outlaw possession of the sometimes-useful object when the attendant circumstances, including the time, place, destination of the possessor, the alteration of the object from standard form, and other relevant facts indicated that the possessor would use the object for a dangerous, not harmless, purpose. . . .' " (*Mowatt, supra,* 56 Cal.App.4th at p. 718, quoting *People* v. *Grubb* (1965) 63 Cal.2d 614, 620-621 [47 Cal.Rptr. 772, 408 P.2d 100] (*Grubb*).) Despite this guidance from our Supreme Court, there was a split of authority about the relevance of the defendant's subjective intent in cases decided under the judicial definition of "dirk or dagger." (See, e.g., *In re Robert L.* (1980) 112 Cal.App.3d 401, 404-405 [169 Cal.Rptr. 354] [applying *Grubb* analysis to hold that jury could consider evidence of the defendant's subjective intent and surrounding circumstances to determine whether an icepick was a dirk or dagger]); *People* v. *Ferguson* (1970) 7 Cal.App.3d 13, 19-20 [86 Cal.Rptr. 383] [same with respect to butcher knife with an eight-inch blade, a point, and one cutting edge]; but cf. *People* v. *Barrios* (1992) 7 Cal.App.4th 501, 504-506 [8 Cal.Rptr.2d 666] [distinguishing *Grubb,* and holding that "dirk or dagger" refers to a stabbing instrument without regard to circumstances of use]; *Bills* v. *Superior Court* (1978) 86 Cal.App.3d 855, 861-862 [150 Cal.Rptr. 582] [defendant's intent to use unaltered barber scissors as a weapon for his protection was immaterial, and could not convert such an instrument into a dirk or dagger].)

As further noted in *Mowatt,* the application of judicially derived definitions of "dirk or dagger" was somewhat inconsistent, leading to the suggestion in appellate cases that the Legislature take on the task of providing such definition. (*Mowatt, supra,* 56 Cal.App.4th at p. 717.) The 1993 version of section 12020(c)(24) was held in *Mowatt* to track the technical definition of a "dirk or dagger," making illegal only those instruments *designed* as stabbing weapons and thus rendering the intended use or purpose of possession irrelevant. (56 Cal.App.4th at pp. 718-719.) However, the Legislature

subsequently reconsidered the question and substituted a much broader definition of "dirk or dagger" in the 1995 statute. (*Id.* at p. 719.) The question now before us is the relevance of intended use, or purpose of possession, under this latest version.

Only a few cases have interpreted the 1995 version of section 12020(c)(24). *People* v. *Sisneros* (1997) 57 Cal.App.4th 1454 [67 Cal.Rptr.2d 782], held that a device which requires some degree of assembly does not meet the 1995 statutory definition of "dirk or dagger" because it is not " 'capable of ready use as a stabbing weapon.' " (*Id.* at p. 1455.) Regarding intent, the court held: "Because of the facts before us, we will not get into the question of whether intent is ordinarily relevant under the 1995 amendment, with reference to other scenarios or other devices. We find intent irrelevant here." (*Id.* at p. 1458, fn. 3.)

*In re George W.* (1998) 68 Cal.App.4th 1208 [80 Cal.Rptr.2d 868] involved the 1998 version of section 12020(c)(24),[11] and a folding knife found in defendant's pocket in a closed position with the blade retracted into the handle. (*In re George W., supra,* at pp. 1214-1215.) At trial, defense counsel argued that the juvenile's "intended use of the knife was relevant to the determination whether it met the definition of 'dirk or dagger.' " Although there was evidence the juvenile used the knife in his work, the juvenile court "examined the knife and expressed the opinion the knife was 'a deadly-looking knife just on its appearance to the average lay person.' The [juvenile] court concluded the knife was intended to stab someone [and] was a 'dirk or dagger' within the meaning of the law . . . ." (*Id.* at p. 1211.) The Court of Appeal in *George W.* reversed, and held: "No reported decision has yet had occasion to apply [the 1998] definition to a given state of facts. Nevertheless, we believe its terms are to be literally applied and 'strictly construed.' [Citation.]" (68 Cal.App.4th at p. 1214, quoting *People* v. *Bain, supra,* 5 Cal.3d at p. 850.) Therefore, since the "folding knife" was found in a closed position, as a matter of law it was not a dirk or dagger. (*In re George W., supra,* at p. 1215.)

In dicta in *Mowatt*, the court stated: "We note the [1995] version of section 12020, subdivision (c)(24), which turns on whether a knife or other instrument 'is capable of ready use as a stabbing weapon,' casts the issue of intent in a different light. A persuasive argument could be made that by shifting from the design of the weapon to its capability for dangerous use,

---

[11]In 1998, the Legislature amended section 12020(c)(24) by adding: "A nonlocking folding knife, a folding knife that is not prohibited by Section 653k, or a pocketknife is capable of ready use as a stabbing weapon that may inflict great bodily injury or death *only if the blade of the knife is exposed and locked into position.*" (See Stats. 1997, ch. 158, § 1, italics added.)

the Legislature opened the door for both the prosecution and the defense to introduce evidence of intended use when the implement at issue has innocent uses but may be considered dangerous under the circumstances of its possession. [Citations.] In *People* v. *Graham* [(1969) 71 Cal.2d 303 [78 Cal.Rptr. 217, 455 P.2d 153]], a prosecution for robbery while ' "armed with a dangerous or deadly weapon," ' the court held that when 'the defendant employs an instrumentality which in the strict sense of the word does not constitute a dangerous or deadly weapon,' the jury must determine 'whether the perpetrator intended to use it as a weapon.' (71 Cal.2d at pp. 328-329.)" (*Mowatt, supra,* 56 Cal.App.4th at p. 721, fn. 7.)[12] However, the weapon in *Mowatt* was "an ordinary hunting knife." (*Id.* at p. 715.) Because it was "primarily designed for use as a cutting implement in various recreational activities, not as a stabbing weapon meant to inflict great bodily injury or death (though it [was] certainly capable of such use)," the *Mowatt* court held that "the [1993] statutory definition simply does not include instruments primarily designed for lawful uses but subject to criminal misuse." (*Id.* at p. 720, fn. omitted.)

Most recently, in *People* v. *Oskins* (1999) 69 Cal.App.4th 126 [81 Cal.Rptr.2d 383] (*Oskins*), which involved the 1995 statute, the trial court informed the jury that defendant's intent with regard to use of the object in question—a knife with a two-and-one-half-inch blade, which was sharpened on one side with serrations on the other—was irrelevant, and excluded available evidence that defendant intended to use the knife in his work as a mechanic. (*Id.* at pp. 129-130.) The court of appeal in *Oskins* reversed, interpreting the 1995 statute as follows: "In a literal sense, section 12020, subdivisions (a) and (c)(24) could be construed as imposing liability on anyone who conceals on his or her person a device that is capable of ready use as a stabbing weapon, whether or not the device is designed for another, innocent purpose, and possessed for that purpose. That reading would be so broad as to criminalize a large range of heretofore innocent conduct, acts that were never before regarded as criminal. The tailor who places a pair of scissors in his jacket and the carpenter who puts an awl in his pocket, each for the completely innocent purpose of using the instrument in his or her craft, would be felons. Unless the Legislature makes it clear that it intends so bizarre a result, we will not infer such a meaning." (*Oskins, supra,* 69 Cal.App.4th at p. 138.) Furthermore, based on the foregoing interpretation, and a concession by the Attorney General that section 12020(a) is not a strict

---

[12]It is noteworthy that the opinion in *Mowatt, supra,* 56 Cal.App.4th 713, was filed on July 22, 1997, after the jury returned its verdicts on the current and prior offenses, and after conflict counsel was appointed to investigate the possibility of a new trial motion. The dicta found in footnote 7, at page 721 of *Mowatt* formed the centerpiece of appellant's new trial motion.

liability offense, the *Oskins* court concluded that the statute contains an implied mens rea of "intent to use the instrument as a weapon" which is an "element of the offense to be proven by the People." (69 Cal.App.4th at p. 138, citing *People* v. *Flood, supra,* 18 Cal.4th at p. 481.) More fully stated, the *Oskins* court held that the prosecution must prove the defendant "knew that he or she possessed a device 'capable of ready use as a stabbing weapon that may inflict great bodily injury or death' *and carried it for use as a weapon.*" (*Oskins, supra,* 69 Cal.App.4th at p. 139, italics added.)

After thus defining the essential elements of a violation of section 12020(a), the *Oskins* court turned to the issue of prejudice to the defendant from the trial court's refusal to allow evidence of innocent purpose and its failure to instruct on this "material element," and held: "The court's failure to have the jury determine appellant's mens rea was a violation of his right to due process under the California and federal constitutions. [(*People* v. *Flood, supra,* 18 Cal.4th at p. 482.)] Under the circumstances of this case, we cannot say the error was harmless beyond a reasonable doubt, or that it is improbable that appellant would not have suffered the same result if the error had not been made." (*Oskins, supra,* 69 Cal.App.4th at p. 139.)

■ We find merit in much of the reasoning and holding of *Oskins.*[13] That is, we agree that section 12020(a), and the 1995 version of section 12020(c)(24), must be interpreted to include an element of intent or purpose to use the concealed instrument as a stabbing weapon. To hold otherwise would render the statute overbroad as it would criminalize otherwise wholly innocent conduct. (*Oskins, supra,* 69 Cal.App.4th at p. 138.) Like the *Oskins* court, we are concerned that the Legislature has enacted a statute that on its face, makes a felon out of "the tailor who places a pair of scissors in his jacket and the carpenter who puts an awl in his pocket" (*Oskins, supra,* 69 Cal.App.4th at p. 138), or the auto mechanic who absentmindedly slips a utility knife in his back pocket before going out to lunch (*id.* at pp. 129-130), but also out of the shopper who walks out of a kitchen-supply store with a recently purchased steak knife "concealed" in his or her pocket, or the parent who wraps a sharp pointed knife in a paper towel and places it in his coat to carry into a PTA potluck dinner, or even—as appellant claims—the recreational user who tucks his "throwing knives" into a pocket as he heads home after target practice or a game of mumblety-peg. Such instruments are undoubtedly *knives* "capable of ready use as a stabbing weapon that may inflict great bodily injury or death" (§ 12020(c)(24)), but we doubt that the

---

[13]We are mindful of the warning of *People* v. *Barrios, supra,* 7 Cal.App.4th 501, where the Court of Appeal noted: "By allowing the jury to consider the defendant's intent in possessing the knife, the [trial] court permitted a common bread knife to be transformed into a dirk or dagger." (*Id.* at p. 506, fn. omitted.) Intent can be a double-edged sword, so to speak.

Legislature meant to criminalize the conduct of those who would innocently carry such instruments upon their persons, even if "concealed" (§ 12020(a)).

Nevertheless, as we will discuss, our assessment of the "prejudice" to appellant from the failure to have the jury determine appellant's mens rea is considerably different than that analyzed by the *Oskins* court. With this caveat, we turn to the specific claims raised by appellant.

B. *Defense Counsel's Decision to Concede the "Dirk or Dagger" Issue Was a Reasonable Tactic in the Circumstances of This Case.*

■  Appellant's first contention is that his counsel provided ineffective representation by conceding that the knives fell within the statutory definition of "dirk or dagger" found in the 1995 version of section 12020(c)(24), and by failing to request CALJIC No. 12.42 regarding "intended use" as determinative of the character of the concealed instrument as a "weapon." We disagree.

■  In order to establish ineffective assistance, a defendant must demonstrate that counsel's performance was deficient when measured against the standard of a reasonably competent attorney, and that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. (*In re Sixto* (1989) 48 Cal.3d 1247, 1257 [259 Cal.Rptr. 491, 774 P.2d 164].) A reasonable probability is a probability sufficient to undermine confidence in the outcome. (*Ibid.*)

■  "Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. [Citation.] A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. . . . Even the best criminal defense attorneys would not defend a particular client in the same way. [Citation.]" (*Strickland* v. *Washington* (1984) 466 U.S. 668, 689-690 [104 S.Ct. 2052, 2065-2066, 80 L.Ed.2d 674].) "[A] defendant, while entitled to reasonably competent representation, is not guaranteed a successful defense or even a letter-perfect defense." (*People* v. *Wallin* (1981) 124 Cal.App.3d 479, 484-485 [177 Cal.Rptr. 303].)

Moreover, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and

strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." (*Strickland* v. *Washington, supra,* 466 U.S. at pp. 690-691 [104 S.Ct. at p. 2066].) "The trial judge is the one best situated to determine the competency of defendant's trial counsel. Where, as here, defendant is represented by different counsel at the motion for a new trial and the issue is called to the trial court's attention, the trial judge's decision is especially entitled to great weight and we defer to his fact finding power. Absent a showing of clear and unmistakable abuse, we will not disturb his decision." (*People* v. *Wallin, supra,* 124 Cal.App.3d at p. 483.)

In the instant case, the trial court could and presumably did believe Steinberg when he testified that he had reviewed the statute, the statutory history, the case law, the knives and the other available evidence, and had made a tactical decision that no reasonable jury would decide the knives were not dirks or daggers under the applicable provision. As detailed above, section 12020(a) provides that carrying a concealed "dirk or dagger" is a criminal offense. The 1995 version of section 12020(c)(24), which covers the instant case, defined "dirk or dagger" as "a knife or other instrument with or without a handguard that is capable of ready use as a stabbing weapon that may inflict great bodily injury or death." There is no dispute that the instruments found in the sheath attached to appellant's belt were "knives." Given the shape and design of the knives, moreover, it was entirely reasonable for trial counsel to conclude it was extremely unlikely that a rational trier of fact would find the knives were not "capable of ready use as a stabbing weapon that may inflict great bodily injury or death." (§ 12020(c)(24).) At a minimum, it was reasonable for defense counsel to conclude that minimizing the jury's viewing and handling of the "throwing knives"—and consideration of the hazard posed thereby—was in the best interests of his client, and that conceding the "dirk or dagger" issue, while focusing the jury's attention on the thin evidence of purposeful "concealment," was the best way to accomplish that objective.

It is, moreover, quite likely that the trial court disbelieved appellant's claim that he told Steinberg about his "innocent use" of the knives on the afternoon preceding his arrest. The trial court also could and presumably did believe Steinberg when he said he made a tactical decision *not* to raise the issue of appellant's "intent" because he was concerned that would allow the prosecutor to present devastating evidence of the misconduct underlying appellant's prior conviction for assault with a deadly weapon, which involved what appellant admitted was a "stabbing." (See Evid. Code, § 1101, subd. (a); *People* v. *Ewoldt* (1994) 7 Cal.4th 380, 402 [27 Cal.Rptr.2d 646, 867 P.2d 757]; *People* v. *Kipp* (1998) 18 Cal.4th 349, 371 [75 Cal.Rptr.2d

716, 956 P.2d 1169].) Thus, the record contains substantial evidence that the defense as conceived by Steinberg was based on: (1) a thorough evaluation of the applicable statute and relevant cases defining the term "dirk or dagger"; (2) an adequate investigation of the facts, and the absence of information about "innocent use"; and (3) a reasonable professional judgment that it would be too risky to open the door to evidence of appellant's prior conviction by explicitly arguing and requesting instruction on a theory of "innocent use" of the throwing knives.[14] Accordingly, Defense Counsel Steinberg made a valid choice of tactics, his representation was not deficient in any material way, and appellant's claim for ineffective assistance of counsel fails as a matter of law.

C. *The Trial Court's Failure to Give CALJIC No. 12.42 Was Not Reversible Error.*

Appellant next contends that the trial court's failure to instruct the jury sua sponte with CALJIC No. 12.42 was prejudicial error. We reject this claim as well.

As we have previously noted, the 1995 statutory definition of "dirk or dagger" must be interpreted to include a "mens rea" element of intent to use a concealed instrument as a "stabbing weapon." (*Oskins, supra,* 69 Cal.App.4th at p. 139.) Furthermore, at the time of trial, CALJIC No. 12.42, if given, would have provided appropriate focus on such an element by instructing: "In determining if the instrument or object in this case was a weapon of the kind within the law as stated, you may consider the circumstances attending any possession of the instrument or object by the defendant, such as the time and place of its possession; the destination of the possessor; any alteration of the object from its standard form; and evidence, if any, indicating its intended use by the possessor for a dangerous rather than a harmless purpose." (CALJIC No. 12.42 (6th ed. 1996 bound vol.) p.

---

[14]In his motion for new trial, appellant made much of the fact that, at the conclusion of the preliminary hearing, the magistrate found no evidence of "intent to use th[e] weapon[s] to assault" and, thus, declined to bind him over for trial on a misdemeanor violation of section 12024. He claimed this should have "raised a red flag" in the defense camp and should have precipitated a section 995 motion. It is, however, quite clear that Steinberg had already determined that raising and arguing a claim of "innocent intent" was too dangerous in that the prosecutor might then be able to present evidence of appellant's prior conviction for assault with a deadly weapon, a knife, in a stabbing that resulted in great bodily injury. Steinberg did what he could to keep the jury from hearing that evidence—by seeking and obtaining bifurcation of the hearing on the prior conviction, and by objecting to the prosecutor's proposed use of the prior for impeachment purposes. It was clear from this latter skirmish that the trial court would not exclude the prior conviction on Evidence Code section 352 grounds. Thus, it was reasonable for Steinberg to avoid the subject of appellant's "intent" and focus his defense on issues he thought would sway the jury to acquit.

86.)[15] It is, moreover, well settled that the due process clause of the California and federal Constitutions includes the right to have the jury determine every material issue presented by the evidence, and requires the trial court—at least in the ordinary case—to instruct the jury upon every material element of an offense. (*People* v. *Flood, supra,* 18 Cal.4th at pp. 480-482, 490-491; *Oskins, supra,* 69 Cal.App.4th at p. 139; see also *People* v. *Cummings* (1993) 4 Cal.4th 1233, 1311 [18 Cal.Rptr.2d 796, 850 P.2d 1].) Thus we find that there is generally a duty to instruct sua sponte on the mens rea element of intent to use a concealed instrument as a "stabbing weapon" under the 1995 statutory definition of "dirk or dagger."

In this case, however, the trial court's failure to do so, though erroneous, was harmless.[16] Although the trial court ordinarily has a sua sponte duty to instruct upon every material element of an offense (*People* v. *Flood, supra,* 18 Cal.4th at p. 480), instructional error removing an element of the crime from the jury's consideration has been deemed harmless under both the state and federal due process guarantees where the defendant concedes or admits the element. (*People* v. *Flood, supra,* 18 Cal.4th at pp. 504-505, citing *Connecticut* v. *Johnson* (1983) 460 U.S. 73, 87 [103 S.Ct. 969, 977-978, 74 L.Ed.2d 823]; see also *Sullivan* v. *Louisiana* (1993) 508 U.S. 275, 281 [113 S.Ct. 2078, 2082-2083, 124 L.Ed.2d 182]; *Carella* v. *California* (1989) 491 U.S. 263, 270 [109 S.Ct. 2419, 2423, 105 L.Ed.2d 218] (conc. opn. of Scalia, J.); *People* v. *Richie* (1994) 28 Cal.App.4th 1347, 1359-1360 [34 Cal.Rptr.2d 200].) During his closing argument, appellant's trial counsel clearly conceded that the knives found upon appellant's person met the statutory definition of "dirk or dagger." This concession placed the "dirk or dagger" element outside the scope of matters the trier of fact had to decide. In such a situation, we can be quite certain there is no possibility the trial court's failure to instruct affected the result. (*People* v. *Flood, supra,* 18 Cal.4th at p. 507.)

As we have noted, defense counsel's decision to defend appellant in this manner was a valid tactical choice, well within the range of reasonable

---

[15]CALJIC No. 12.42 was revised in 1998 to provide: "A deadly [or dangerous] weapon is any weapon, instrument or object that is capable of being used to inflict death or great bodily injury[.] [, and it can be inferred from the evidence, including the attendant circumstances, the time, place, destination of the possessor, [the alteration, if any, of the object from its standard form,] and any other relevant facts, that the possessor intended on that [or those] occasion[s] to use it as a weapon should the circumstances require.] [¶] [It is not necessary that the weapon in fact be used or be visible.]" (CALJIC No. 12.42 (1998 rev.) (6th ed. pocket pt.).) While not quite accurate, at least insofar as a "dirk or dagger" is not the precise equivalent of a "deadly weapon," the 1998 version of CALJIC No. 12.42 captures the essence of the *Oskins* holding. (See 69 Cal.App.4th at p. 139.)

[16]Of course, given the relatively recent change in the statutory definition of "dirk or dagger," the lack of interpretive case law, and the 1996 CALJIC Use Note previously cited, it is difficult to fault the trial court for any error in this regard.

professional judgment. Moreover, although appellant had ultimate authority as to "fundamental" decisions about his case (see *Shephard* v. *Superior Court* (1986) 180 Cal.App.3d 23, 29-30 [225 Cal.Rptr. 328]; *In re Horton* (1991) 54 Cal.3d 82, 94-95 [284 Cal.Rptr. 305, 813 P.2d 1335]), there is nothing in the record on appeal to indicate the decision to concede the "dirk or dagger" issue was made without appellant's informed consent. Of course, appellant testified at the hearing on his motion for new trial that he told Steinberg he had purchased and used the knives for an innocent recreational purpose. Appellant further claimed he had identified witnesses—presumably his sister and brother-in-law—who could so testify. But even if appellant did tell Steinberg that his family members could vouch for him on the "innocent use" issue, there is no showing that appellant timely objected (i.e., before the jury returned its verdict) to Steinberg's decision not to go down that dangerous path. Indeed, there is nothing in this record even to suggest any friction or conflict in the attorney-client relationship until a month after the jury made findings on the prior conviction allegations. There being no showing that Steinberg's decision to concede the "dirk or dagger" issue was not authorized, appellant is bound by his counsel's concession.

The only remaining issue is whether the concession in this case was broad enough to include an admission on, or a decision not to contest, the issue of "intent" to use the knife as a weapon. We readily conclude it was. A defendant's subjective intent or purpose of possession has long been treated as an aspect of the definition of "dirk or dagger," or as an implied limitation on the category of instruments encompassed by those terms. (*Grubb, supra,* 63 Cal.2d at pp. 620-621; *In re Robert L., supra,* 112 Cal.App.3d at pp. 404-405; *People* v. *Ferguson, supra,* 7 Cal.App.3d at pp. 19-20; see also *In re Quintus W., supra,* 120 Cal.App.3d at pp. 644-645.) It was clear from Steinberg's testimony at the hearing on the motion for new trial that he considered—but rejected—the notion of arguing that the "throwing knives" were harmless sporting goods, possessed for innocent purposes. As we have noted, however, Steinberg believed this was a hopeless and dangerous argument given the "ugly" appearance of the knives, the circumstances of possession, and appellant's history of using a knife in a stabbing in 1987. Thus, it is quite clear that Steinberg intended to concede both that the throwing knives fell within the statutory definition of "dirk or dagger," and that there was no viable factual basis for claiming "innocent" possession.

In sum then, appellant—through counsel—made a valid concession that the throwing knives found on his person fell within the 1995 statutory definition of "dirk or dagger" and that any attempt to prove otherwise, or to contest the issue of intent to use the knives as a weapon would, at best, fall on deaf ears and, at worst, backfire with the jury and increase the likelihood

of conviction. In these circumstances, even though it removed an element of the crime from the jury's consideration, any error in the trial court's failure to instruct was plainly harmless. (*People* v. *Flood, supra,* 18 Cal.4th at pp. 504-505; *Connecticut* v. *Johnson, supra,* 460 U.S. at p. 87 [103 S.Ct. at p. 977]; *Sullivan* v. *Louisiana, supra,* 508 U.S. at p. 281 [113 S.Ct. at pp. 2082-2083]; *Carella* v. *California, supra,* 491 U.S. at p. 270 [109 S.Ct. at p. 2423] (conc. opn. of Scalia, J.); *People* v. *Richie, supra,* 28 Cal.App.4th at pp. 1359-1360.)

D., E.*

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

### III. Disposition

The case is remanded to the trial court to determine the local conduct credits in accordance with the views expressed in the unpublished portion of our opinion, to modify the abstract of judgment to include such credits, and to forward a certified copy of the amended abstract to the Department of Corrections. In all other respects, the judgment is affirmed.

Hanlon, P. J., and Reardon, J., concurred.

---

*See footnote, *ante*, page 1088.