Filed 9/11/13  P. v. Andrews CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Trinity)

----

| | |
|---|---|
| THE PEOPLE, | C071899 |
| Plaintiff and Respondent, | (Super. Ct. No. 11F147) |
| v. | |
| JUDITH D. ANDREWS, | |
| Defendant and Appellant. | |

In this case defendant Judith D. Andrews drove a three year old and a 10 month old in her car without car seats.  The information charged defendant with two counts of felony child endangerment, but the information described the offenses as misdemeanor child endangerment (felony child endangerment is that likely to produce great bodily injury or death but the misdemeanor offense omits that requirement).  The jury instruction similarly listed the elements only for misdemeanor child endangerment and the jury so found.  At sentencing, the trial court reduced the convictions to misdemeanor child endangerment and placed defendant on four years' informal probation.

We affirm.

1

## FACTUAL AND PROCEDURAL BACKGROUND

On August 4, 2011, social workers from the Trinity County Health and Human Services, Child Protective Services (CPS) sought to serve warrants to remove the three year old and the 10 month old from their mother and place them in protective custody. The two social workers, Nicole Hays-Bradford and Elizabeth Hamilton, believed the children were staying with their great-grandmother, defendant. They went to the mother's home with Trinity County Sherriff's Deputy William Robles. Mother told them the children were with her mother (the children's grandmother), and with her grandmother (who was defendant and the children's great-grandmother), who were all on the way back to the campground where defendant was staying.

The social workers left the mother's residence and spotted defendant in the driver's seat of her car, which was parked by a supermarket. Grandmother was leaving the market very quickly with the three year old and a bag of groceries. She put the three year old in the backseat and then got into the front passenger seat next to defendant. There was no upright car seat for the three year old in the backseat.

As defendant drove out of the parking lot and headed west on State Route 299, she recognized the two social workers. Defendant stopped at a stop sign, but when the car in front of her turned left, she rolled through the stop and followed, making a left turn behind the car in front of her. This caused defendant's tires to squeal and another vehicle had to swerve to avoid her.

The CPS workers followed defendant and notified Deputy Robles, who activated his lights and siren and drove to the location. When Deputy Robles got within a car length of defendant, she was going about 60 miles per hour in a 55-miles-per-hour zone, and less than one car length behind the car in front of her. Defendant was "darting back and forth, left and right, in her lane several times." Defendant aggressively slammed on the brakes and the accelerator as she apparently tried to pass the vehicle in front of her. Defendant pulled over a few miles later. The three year old was turned around on his

2

knees looking at the officer out the back window; he was not in a car seat or wearing a seat belt. The ten month old was in the backseat in an infant carrier that was not restrained by seat belts.

Testifying in her defense, defendant said the infant seat was put in her car by the children's aunt, and she assumed that the aunt properly attached the seat to the car. Defendant knew that the children's grandmother properly buckled the three year old into his seat belt.

The charges of child endangerment were based on defendant's act of driving with the two small children while they were not properly placed in child seat restraints. Defendant was charged in two counts with "a felony, to wit: a violation of Section 273a(a) of the California Penal Code." Both counts provided an identical definition of the charged offense, that defendant "having the care and custody" of the three year old (count one) and the ten month old (count two), "under circumstances and conditions other than those likely to produce great bodily injury and death, did willfully cause and permit the person and health of said child to be injured and did willfully cause and permit said child to be placed in such a situation that its person and health may be endangered."

Because *felony* child endangerment requires the child to be endangered under circumstances or conditions "*likely to produce great bodily harm or death*" (Pen. Code,[1] § 273a, subd. (a)) the information described *misdemeanor* child endangerment, an offense not requiring a likelihood of great bodily harm or death (§ 273a, subd. (b)). When the trial court reduced both counts from felonies to misdemeanors, it, in effect, conformed the proof at trial to the allegations in the information.

This straightforward result has been challenged by defendant who raises a myriad of unmeritorious claims. Thus, we affirm.

---

[1]    Undesignated statutory references are to the Penal Code.

3

DISCUSSION

I

*Child Endangerment Instruction*

The trial court gave a modified version of the felony child endangerment instruction (CALCRIM No. 821) which omitted the reference to "*under circumstances or conditions likely to produce great bodily harm or death.*" By this modification, the jury was not instructed on felony child endangerment at all. The defendant claims this was reversible error. While it was *error if the offense charged was actually felony child endangerment*, the People claim any error was harmless because defendant's convictions were reduced to misdemeanor violations of section 273a. The People are correct and the defendant's argument is frivolous.

II

*Other Jury Instructions*

Defendant contends instructions on the elements of child endangerment, criminal negligence, and Vehicle Code section 27360 combined to create an impermissible presumption of guilt. We disagree.

The trial court gave the standard jury instruction on the required union of act and general criminal intent, CALCRIM No. 250, as follows: "The crime[s] charged in this case require[s] proof of the union, or joint operation, of the act and wrongful intent. [¶] For you to find a person guilty of the crime[s], that person must not only commit the prohibited act [or fail to do the required act], but must do so with wrongful intent. A person acts with wrongful intent when he or she intentionally does a prohibited act [or fails to do a required act]; however, it is not required that he or she intend to break the law. The act required is explained in the instruction for that crime."

The jury was also given a modified version of the standard instruction on the union of act and criminal negligence, CALCRIM No. 253, as follows: "For you to find a

4

person guilty of the crime[s], a person must do an act [or fail to do an act] with negligence. Negligence is defined in the instructions for that crime."

The trial court instructed on child endangerment with the following modified version of the standard instruction, CALCRIM No. 821, as follows:

"The defendant is charged [in counts 1 & 2] with child endangerment [in violation of Penal Code section 273a(a)]. [¶] To prove the defendant is guilty of this crime, the People must prove that: [¶] [1. The defendant, while having care or custody of a child, willfully caused or permitted the child to be placed in a situation where the child's person or health was endangered]; [¶] [AND] [2. The defendant caused or permitted the child to be endangered]; [¶] [AND] [3. The defendant was criminally negligent when she caused or permitted the child to be endangered]. [¶] A child is any person under the age of 18 years. [¶] Criminal negligence involves more than ordinary carelessness, inattention, or mistake in judgment. A person acts with criminal negligence when: [¶] 1. He or she acts in a reckless way that is a gross departure from the way an ordinarily careful person would act in the same situation; [¶] 2. The person's acts amount to disregard for human life or indifference to the consequences of his or her acts, [¶] AND [¶] 3. A reasonable person would have known that acting in that way would naturally and probably result in harm to others."

Defendant notes this instruction omits the definition of "willfully" provided in CALCRIM No. 821.**2**

Immediately after the modified CALCRIM No. 821, the trial court properly instructed the jury on Vehicle Code section 27360, an infraction, as to when a child must be put in a car seat.

---

**2** CALCRIM No. 821 states, in pertinent part: "Someone commits an act willfully when he or she does it willingly or on purpose."

"On review, we examine the jury instructions as a whole, in light of the trial record, to determine whether it is reasonably likely the jury understood the challenged instruction in a way that undermined the presumption of innocence or tended to relieve the prosecution of the burden to prove defendant's guilt beyond a reasonable doubt. [Citation.]" (*People v. Paysinger* (2009) 174 Cal.App.4th 26, 30.) Since defendant did not object to the instructions, her contention is forfeited unless the instruction affected her substantial rights. (§ 1259; *People v. Christopher* (2006) 137 Cal.App.4th 418, 426-427.) Substantial rights are equated with a miscarriage of justice, which results if it is reasonably probable the defendant would have obtained a more favorable result had the instruction been given. (*Christopher*, at pp. 426-427; *People v. Watson* (1956) 46 Cal.2d 818, 835-836.)

Defendant claims the trial court's modifications of CALCRIM Nos. 253 and 821 constituted prejudicial error by allowing the jury to find defendant guilty based on ordinary negligence rather than criminal negligence, and by failing to define the term "willfully," a term she asserts "is critical to the jury's understanding of the offense." She further claims the instruction on Vehicle Code section 27360 was incorrect, misleading, and when combined with the other two alleged instructional errors, would lead the jury to impermissibly presume guilt from a violation of that statute.

Defendant is correct that she could not be convicted on a finding of ordinary negligence because criminal negligence involves " ' "a higher degree of negligence than is required to establish negligent default on a mere civil issue." ' " (*People v. Valdez* (2002) 27 Cal.4th 778, 788.) Read in isolation, the trial court's version of CALCRIM No. 253 could induce the jury to apply the incorrect standard of negligence. The problem with defendant's contention is that this instruction cannot be read in isolation. In addition, the instruction here specifically informs the jury that "[n]egligence is defined in the instructions on that crime." The instruction on the only charged crime, the modified CALCRIM No. 821, instructed the jury that it must find defendant "criminally negligent"

6

in order to convict and then gave the standard instruction on criminal negligence.[3]  Read in their proper context, the instructions correctly instructed the jury that it had to find defendant criminally negligent in order to find her guilty.  The modification of CALCRIM No. 253 was not erroneous.

Defendant's contention that the trial court should have defined the term "willfully" in its version of CALCRIM No. 821 is equally unavailing.

"In general the trial court has a sua sponte duty to give amplifying or clarifying instructions ' "where the terms used [in an instruction] have a technical meaning peculiar to the law." ' "  (*People v. Richie* (1994) 28 Cal.App.4th 1347, 1360 (*Richie*).)  "When a term is commonly understood by those familiar with the English language and is not used in a technical sense peculiar to the law, an instruction as to its meaning is not required in the absence of a request."  (*People v. Williams* (1988) 45 Cal.3d 1268, 1314.)

In *Richie*, the defendant was convicted of violating Vehicle Code section 2800.2, which prohibits evading a pursuing peace officer with "a willful or wanton disregard for the safety of persons or property."  (Veh. Code, § 2800.2, subd. (a); *Richie*, *supra*, 28 Cal.App.4th at pp. 1351, 1353.)  The jury was given a modified version of the standard instruction at the time, CALJIC No. 12.85, which stated that the People must prove the defendant "drove the vehicle in a willful and wanton disregard for the safety of persons or property," but did not further define willful or wanton.  (*Richie*, at pp. 1353-1354 & fn. 1.)  Defendant argued on appeal the trial court committed reversible error by failing to define the terms "willful" and "wanton."  (*Id*. at p. 1360.)

The Court of Appeal rejected the contention.  (*Richie*, *supra*, 28 Cal.App.4th at p. 1362.)  The dictionary defined "willful" as:  " '1:  obstinately and often perversely self-willed 2:  done deliberately:  INTENTIONAL' "; and "wanton" as:  " '3a:  MERCILESS,

---

[3]     Defendant does not contest the definition of criminal negligence given in the modified CALCRIM No. 821.

INHUMANE . . . b: having no just foundation or provocation: MALICIOUS.' " (*Richie*, at p. 1361, quoting Webster's New Collegiate Dict. (1977) pp. 1341, 1318.) There was no different technical legal definition of those terms. CALJIC No. 12.85 defined " 'willful and wanton;' " as " 'an intentional and conscious disregard for the safety of . . . persons or property. It does not necessarily include an intent to injure.' " (*Richie*, at p. 1361, quoting CALJIC No. 12.85.) This definition was taken from a decision that defined " 'willful' . . . as 'intentional' and . . . 'wanton' as . . . 'includ[ing] the elements of consciousness of one's conduct, intent to do or omit the act in question, . . . and reckless disregard of consequences.' " (*Richie*, at p. 1361.) There was also no meaningful distinction between the dictionary definition of those terms and their meaning in Vehicle Code section 2800.2. (*Richie,* at p. 1361.)

Agreeing with *Richie*, we find "willfully" is not a technical term which requires further explanation. Since defendant did not request further explanation of the term, no additional instruction was required.

The trial court gave the following instruction on Vehicle Code section 27360: "A driver shall not transport on a highway in a motor vehicle a child who is under eight years of age, without properly securing that child in the rear seat without an appropriate child passenger restraint system."

Defendant first contends that the instruction applies the wrong version of the statute. The instruction uses the language of the most recent version of Vehicle Code section 27360, which became effective on January 1, 2012, after the incident at issue in this case. At the time of the incident, Vehicle Code section 27360 stated in pertinent part: "A driver may not transport on a highway a child in a motor vehicle . . . without properly securing the child in a rear seat in a child passenger restraint system meeting applicable federal motor safety standards, unless the child is one of the following: [¶] (a) Six years of age or older. [¶] (b) Sixty pounds or more." (Former Veh. Code, § 27360.)

8

Defendant claims the older version of Vehicle Code section 27360 meaningfully differs from the version given in the instruction by using the term "may not" rather than "shall not," and by covering children under the age of six rather than children under eight years old. Neither difference is meaningful. This is another frivolous argument. Also, since the children in this case were three years old and 10 months old, both versions of Vehicle Code section 27360 applied to the children in defendant's car.

Finally, defendant finds the instruction "did not have any direct application to the legal issues to be decided in the case." She is wrong. This instruction informed the jury of the legal duty of a driver to properly secure small children with appropriate child passenger restraint systems, upon which a claim of negligent conduct is based. Defendant claims this instruction informed the jury that it could "conflate the strict liability of the traffic infraction with the intent required for a violation of the child abuse statute." According to defendant, when combined with the allegedly erroneous modifications of CALCRIM Nos. 821 and 253, a burden was created that shifted the presumption of guilt. She is wrong. This instruction did not create the risk of a presumption of guilt or the jury ignoring the instructions on the mental element of child endangerment.

### III

### *Sufficiency Of The Evidence*

Defendant claims there is insufficient evidence to support convictions for felony or misdemeanor child endangerment.

In addressing a challenge to the sufficiency of the evidence, we view the entire record in the light most favorable to the judgment and presume in support of the judgment the existence of every fact that the jury reasonably could deduce from the evidence. (*People v. Golde* (2008) 163 Cal.App.4th 101, 108.) Since defendant is convicted of misdemeanor child endangerment, we review the sufficiency of the evidence to support her conviction for that offense. As relevant here, misdemeanor child

9

endangerment is willfully causing or permitting a child to be placed in a situation where his or her person or health may be endangered "under circumstances or conditions other than those likely to produce great bodily harm or death." (§ 273a, subd. (b).)

The evidence shows that defendant drove dangerously. As she tried to avoid CPS and law enforcement, defendant rolled through a stop sign causing another vehicle to swerve out of her way, she exceeded the speed limit, and she swerved in her lane while her 10-month-old and three-year-old great-grandchildren were in the backseat. Witnesses testified that the person who put the three year old in the backseat did not take enough time to secure the child before defendant drove off. In addition, there was no child restraint for the three year old and he was not in a seat belt after the stop. While the 10 month old was in an infant carrier, it was not attached to the car. Since defendant was the driver, it was her duty to properly secure the children. At a minimum, she knew or reasonably should have known that the children were not secured in the backseat. Defendant's claim that she thought the children were secured was not a defense. In any event, the claim was based on her own testimony, which the jury was free to disregard.

Defendant's driving put the children at risk of being in an auto accident. Her vehicle could have been hit had the other car not swerved when defendant rolled through the stop sign. Speeding, swerving in the lane, and tailgating likewise placed the children in her care at a significantly higher risk of being in an accident. Doing so while she knew or reasonably should have known that the children were not secured was criminally negligent and endangered her great-grandchildren's health. Substantial evidence supports defendant's convictions for misdemeanor child endangerment.

## IV

### *Cumulative Error*

Defendant contends that cumulative error warrants reversal. Given the result of convictions for misdemeanor child endangerment, there was, in fact, no error.

10

DISPOSITION

The judgment is affirmed.

      ROBIE     , J.

We concur:

    RAYE    , P. J.

    NICHOLSON  , J.